No. 47,001

B. A. GREEN CONSTRUCTION COMPANY, INC., *Appellee*, v. LIBERTY MUTUAL INSURANCE COMPANY, *Appellant*.

(517 P. 2d 563)

Opinion filed December 8, 1973.

*James C. Wright*, of Shaw, Hergenreter, Quarnstrom & Wright, of Topeka, argued the cause and was on the brief for the appellant.

*Gerald L. Cooley*, of Allen and Cooley, of Lawrence, argued the cause and was on the brief for the appellee.

The opinion of the court was delivered by

OWSLEY, J.: Defendant, Liberty Mutual Insurance Company, issued a comprehensive general liability insurance policy to plaintiff, B. A. Green Construction Company. Green was sued by Huxtable and Associates, Inc., and Liberty Mutual refused to defend Green. The Huxtable claim was settled for $2,000.00 and in this action Green claims he is entitled to recover the $2,000.00 plus the cost of defending the Huxtable suit and the cost of prosecuting this action. Liberty Mutual appeals from an adverse judgment and the issue is whether the policy of insurance provides coverage to Green.

Green, a general contractor, contracted with the University of Kansas Endowment Association for construction of the Kenneth Spencer Memorial Library on the Kansas University campus at Lawrence. Green sub-contracted the mechanical work to Huxtable, who installed the heating and air conditioning system. On August 4, 1968, before the library facility was completed but after partial occupancy by the university, there occurred a malfunction in the air conditioning system installed by Huxtable which caused water to condense on the walls and ceiling and damaged the interior extensively. Green made repairs to the building and, under a clause in Huxtable's contract, charged the cost of such repairs to

Huxtable as an offset of $18,504.54 against money due Huxtable from Green. Huxtable sued Green for $20,350.40, the balance of the contract price (Huxtable and Associates, Inc., v. B. A. Green Construction Co., Inc., No. 25, 214, District Court of Douglas County, Kansas) and Green counter-claimed for cost of the repairs, alleging negligence. Huxtable defended against the counter-claim, alleging contributory negligence. Thereupon, Green demanded that Liberty Mutual assume the defense of the action brought by Huxtable. Liberty refused, asserting there was no duty to defend because the action was in contract and because the policy did not cover the occurrence. Huxtable and Green settled their accounts by an agreement that Green pay Huxtable $2,000.00.

Green successfully sued Liberty in this action for the $2,000.00 paid to Huxtable, $2,940.87 attorney fees and expenses in defending the Huxtable suit, and $1,607.43 attorney fees and expenses incurred in prosecuting this action. The trial court concluded the liability policy issued by Liberty covered the occurrence in which the library building was damaged, and Liberty's refusal to defend against the Huxtable action was without just cause or excuse.

Liberty first contends the duty to defend is determined by the petition filed against the insured and not by facts elicited during a full-blown trial. Both parties on oral argument agree this is no longer the law in this state in view of *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.,* 212 Kan. 681, 512 P. 2d 403, decided after the parties prepared briefs in this action. In *Spruill,* it was said:

"An insurer's duty to defend attaches where facts, extraneous to the allegations of the pleadings, known or reasonably ascertainable by insurer, make out a case against the insured covered by the policy." (Syl. ¶ 2.)

We mention this because the point is emphasized in the parties' briefs and not because we entertain any thoughts it will aid in the final determination of this action.

The policy of insurance written by Liberty in favor of Green and in full force and effect at the time of the library damage, provided in Section I, Coverage B—Property Damage Liability, the following:

"The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

Coverage A. bodily injury or

Coverage B. property damage to which this policy applies, caused by an occurrence, and the company shall have the right and duty to defend any suit

against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements."

Liberty claims exclusions from the general insuring clause, properly construed, resulted in no coverage of the occurrence, and if no coverage there was no duty to defend. The exclusion read as follows:

"Exclusions
"This policy does not apply:

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(*i*) to property damage to

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(3) property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control:

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"(*k*) to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or work;

"(*l*) to property damage to the named insured's products arising out of such products or any part of such products;

"(*m*) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;"

If we find Liberty is correct in its interpretation of any one of the exclusionary provisions there is no coverage. As to exclusion (*m*), Liberty claims Spencer Library was clearly the work product of Green and the damage done was to work performed by and/or on behalf of Green; therefore, there was no coverage of the loss. Green claims exclusion (*m*) excludes from coverage damage to the walls and ceiling of the library resulting from failure in the work on said walls and ceiling.

The undisputed facts disclose the library was constructed by Green; thus, the building was the work product of Green. Exclusion (*m*) states the insurance does not apply "to work performed by or on behalf of the named insured arising out of the work or any

portion thereof." The "work" referred to in this exclusion can only refer to the building being constructed by Green. We are not impressed by Green's argument that the exclusion is not applicable unless the material, parts or equipment are furnished in connection with the area damaged. The phrase "in connection therewith" refers to the work performed which is the building itself. We conclude exclusion (*m*) clearly eliminates coverage of any damage to the library for which Green may be liable under any theory.

Liberty cites *Haugan et al. v. Home Indemnity Co.*, 86 S. Dak. 406, 197 N. W. 2d 18 (1972), as the most recent case on this subject. This was a declaratory judgment action to determine whether a policy afforded coverage to Haugan for a property damage claim asserted against him by Business Aviation, Inc., in a prior pending action. An appeal was made from a judgment finding coverage extended to the claim and insurers were obligated to defend the prior action. Haugan entered into a contract with Business Aviation to construct a building. Sometime after taking possession, Business Aviation sued Haugan for alleged damages to the building claiming Haugan performed the work in a careless and negligent manner. The insurers asserted as a defense provisions of exclusion (*m*) which is identical to exclusion (*m*) in the instant case quoted above. In holding that exclusion (*m*) eliminates coverage in *Haugan*, the court said:

"According to the allegations of the complaint in the principal action the completed hangar building, in its entirety, constituted Haugan's work product. He designed and constructed it. The damages sought by Business Aviation relate solely to Haugan's work product or to work performed by him in the construction of the building. There are no other damages claimed.

"The alleged facts clearly subject Business Aviation's claim to the unambiguous provisions of exclusion (*m*) which, without qualification, denies coverage for liability on a claim arising out of damage to the work or product of the insured. As the court concluded in the case of Home Indemnity Company v. Miller, 8 Cir., 399 F. 2d 78,

" 'The language used in this exclusion clause is clear and simple—there is nothing ambiguous in the words or phrases used therein. They have a common and well-understood meaning. When viewed and considered in the light of the entire contract, and as a part thereof, it is clear that such clause excludes from liability thereunder any claim for damages arising from internal defectiveness of the insured's own work product'.

"In considering and applying similar exclusionary clauses to claims of this nature the courts have uniformly reached the same conclusion. . . ." (p. 412.)

Authorities cited in support of this case include *Kendall Plumbing*,

*Inc. v. St. Paul Mercury Ins. Co.,* 189 Kan. 528, 370 P. 2d 396. Kendall entered into a contract to install a complete heating and air conditioning system in the Brown Building in Wichita. Kendall purchased from two separate manufacturers a refrigerator unit and a Square D Starter, both of which he installed. The Square D Starter was negligently installed and as a result the refrigerator unit was damaged. Kendall paid for the damage and sought recovery again his insurer for damage to the refrigerator unit. The exclusionary provision to the general insuring clause read as follows:

" 'Any goods or products manufactured, sold, handled, or distributed by the Insured or work completed by or for the Insured out of which the accident arises.' " (p. 529.)

Kendall contended the provision excluded only the defective part which caused the injury, but did not exclude other items installed by Kendall which were damaged by the defective item. This contention is similar to the contention of Green in this case, that damage to the walls and ceiling of the library would have to result from failure in the work on said walls and ceiling to be excluded from coverage. In *Kendall,* this court held:

". . . The exclusion provision definitely states that any goods or products handled or work completed by the insured are excluded. It is clear that the policy was intended to cover only damage to property or items which had not been handled by appellant. Goods or products handled by it, or work completed by it, were specifically excluded." (p. 530.)

Green argues the exclusionary provision in *Kendall* is much broader than exclusion (*l*) in his policy. This may be true if limited to exclusion (*l*); however, in Green's policy exclusion (*l*) and exclusion (*m*) cover matters excluded by a single clause in the Kendall policy.

Green cites *Hauenstein v. St. Paul-Mercury Indemnity Co.,* 242 Minn. 354, 65 N. W. 2d 122 (1954) in support of his position, pointing out that a like policy of insurance covered damages to a building. This cause is distinguishable. Hauenstein was a distributor of plaster. He sold it to a contractor who used it in construction. The plaster was defective and had to be removed by the contractor. The contractor sued Hauenstein and the insurance company refused to defend. Hauenstein filed a declaratory judgment action. Under clauses similar to those at issue in the case at bar, the court held coverage was afforded for damage to the building, but not for damage to the plaster itself. The building was not the work product

of Hauenstein, a supplier, while in this case the building was the work product of Green, a construction contractor.

We find no ambiguity in the wording of the insurance contract, and where a contract is unambiguous it should be enforced according to its terms. (*Kendall Plumbing, Inc. v. St. Paul Mercury Ins. Co.,* supra.) We conclude the comprehensive general liability policy issued to Green by Liberty Mutual afforded no coverage for damage to the library building, the work product of Green, by reason of exclusion (*m*) of the policy eliminating coverage for damage to work performed.

Green further argues he has coverage under exclusion (*k*) if coverage is prohibited by exclusion (*m*). As we construe exclusion (*k*) it provides coverage only if the insured's work or product actively malfunctions and causes damage to property other than insured's work product. (*Haugan et al. v. Home Indemnity Co. et al.,* supra.)

There is no necessity to discuss other matters raised in Liberty's brief in view of our decision to reverse this case with directions to enter judgment for the defendant, Liberty Mutual.

Reversed and remanded with directions.