INDIANA INSURANCE COMPANY, Defendant-Appellant,

v.

Louis L. DeZUTTI, Joanna T. DeZutti, Defendants-Appellees,

and

James S. Gilson, Plaintiff-Appellee.

No. 980S363.

Supreme Court of Indiana.

Sept. 4, 1980.

John T. Hume, III, Michael E. Simmons, Smith & Jones, Indianapolis, for defendant-appellant.

Pete A. Pappas, Clark & Clark, Indianapolis, for defendants-appellees.

Samuel A. Fuller, Stewart, Irwin, Gilliom, Fuller & Meyer, Indianapolis, for plaintiff-appellee.

HUNTER, Justice.

This case is before this Court upon the petition to transfer of defendant-appellant, Indiana Insurance Company (Indiana). Appellee James Gilson, a general contractor, was sued for damages allegedly caused by faulty construction on a house he had built for Louis and Joanna DeZutti. Gilson called upon Indiana to provide his defense pursuant to the terms of a comprehensive general liability policy he owned. Indiana maintained that the alleged loss was not covered by the policy. In a declaratory judgment action, the trial court held that Gilson's policy did cover the alleged loss and did impose a duty upon Indiana to provide a defense on Gilson's behalf. The Court of Appeals, First District, affirmed the trial court's decision, *Indiana Insurance Company v. DeZutti*, (1979) Ind.App., 396 N.E.2d 699. We now grant transfer and reverse. Accordingly, the decision and opinion of the Court of Appeals are hereby vacated, and defendant's petition to transfer is granted.

The facts are not in dispute. Gilson is a general contractor engaged in the construction and remodeling of residential structures. In 1967, Gilson, with the assistance of subcontractors, built a home which he sold to Louis and Joanna T. DeZutti in 1968. In 1975, the DeZuttis allegedly discovered serious cracking of the mortar and bricks. The DeZuttis filed suit against Gilson on the theory of breach of warranty of fitness and alleged the damages were caused by a settling of the building due to improper construction of the footings in that they were not laid in hardpan soil. Gilson called upon Indiana to provide his defense in this action, but Indiana refused, maintaining that the alleged loss was not covered by Gilson's policy of insurance.

The declaratory judgment action involved the construction of certain sections of the insurance policy issued by Indiana. Specifically, the issues presented for review are:

1. Whether an ambiguity exists when certain exclusions (n) or (o) are read in conjunction with exclusion (a), thereby necessitating strict construction against the company and providing coverage for the insured; and

2. Whether exclusions (n) and (o) were ever applicable to the entire house built by Gilson under the facts of this case.

#### I.

The insuring clause of the policy states: "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of

"Coverage A. bodily injury or

"Coverage B. property damage to which this insurance applies, caused by an occurrence . . . ."

Considered alone, the broad insuring clause would seemingly provide coverage to Gilson for liability for the breach of warranty claim filed against him. The insuring clause cannot be considered in isolation, however, as the exclusionary provisions are an integral part of the policy and must be considered to determine the damages "to which this insurance applies."

The broad types of property damage which are potentially covered by the policy are determined by reference to the Definitions and Exclusions sections. The pertinent Definitions are:

" 'property damage' means (1) physical injury to or destruction of tangible property which occurs during the policy period

. . .

\* \* \* \* \* \*

" 'completed operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured . . .

\* \* \* \* \* \*

" 'products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others . . .

\* \* \* \* \* \*

" 'named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle) but, 'named insured's products' shall not include a vending machine or any property other than such container, rented to or located for the use of others but not sold . . . ."

The extent to which each of these defined types of property damage will be provided coverage is outlined in the Exclusions section, the pertinent parts of which are:

"Exclusions

"This insurance does not apply:

"(a) to liability assumed by the insured under any contract or agreement except an incidental contract; but, this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner . . .

"(n) to property damage to the named insured's products arising out of such products or any part of such products;

"(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith . . . ."

Gilson paid a premium for "completed operations hazard" and the "products hazard." It is uncontested in this case that the

property damage arose after Gilson's operations were completed and after possession of the house had been relinquished to the DeZuttis. Therefore, the prerequisite conditions for coming within the "products hazard" or "completed operations hazard" definitions in the policy had been met and there was coverage liability for breach of warranty of fitness unless it was properly excluded in some manner. The question is whether the damage to the insured's work was properly excluded by exclusion (*o*).

The language of this exclusion is broad, unambiguous, and all-inclusive. It clearly provides that the insurance does not apply to property damage to work performed by or on behalf of the insured arising out of either the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith. The terms of this exclusion clearly show that the risk to be covered by the policy was a risk of personal injury or damage to property *other* than the insured's own work or product. As noted in *Weedo v. Stone-E-Brick, Inc.,* (1979) 81 N.J. 233, 405 A.2d 788, where the damages claimed, as in this case, relate only to the insured's work or product, the application of exclusion (*o*) (and the similar exclusion (n)) to deny coverage is virtually unanimous.

Nevertheless, the insured argues that this exclusion when read in conjunction with exclusion (a) creates an ambiguity. Exclusion (a) which denies coverage for liability assumed under contract by the insured expressly contains an exception for breach of warranty of fitness. The insured contends that this express exception in (a) must *grant* or extend coverage to breach of contract damages for the performance of work in a negligent and unworkmanlike manner. Thus he reasons that this grant of coverage is repugnant to exclusions (n) and (*o*) which take away that which has been granted by the language of (a). Reasonable men, therefore, would differ as to the meaning of exclusions (n) and (*o*) and the ambiguity must be resolved in favor of the insured so as to provide coverage.

■ The courts below and a few courts in other jurisdictions have agreed with this reasoning. *See Fontainebleau Hotel Corp. v. United Filigree Corp.,* (Fla.App.1974) 298 So.2d 455, 459–60; *Federal Insurance Co. v. P.A.T. Homes, Inc.,* (1976) 113 Ariz. 136, 547 P.2d 1050, 1053; *Commercial Union Assurance Companies v. Gollan,* 118 N.H. 744, (1978) 394 A.2d 839, 841–42. These opinions appear to be based upon the misconception that the exception to exclusion (a) grants coverage which then becomes ambiguous when it is taken away by exclusions (n) and (*o*). This reasoning ignores the basic principle that exclusion clauses do not grant or enlarge coverage. They are limitations or restrictions on the insuring clause. This principle was recognized by the New Jersey Supreme Court in *Weedo, supra.* That court reversed upon appeal the one decision cited by the Indiana Court of Appeals on this issue. *Weedo v. Stone-E-Brick, Inc.,* (1979) 891 N.J. 233, 405 A.2d 788, *rev'g,* 155 N.J.Super. 474, 382 A.2d 1152. The New Jersey Court also noted that each exclusion is meant to be read with the insuring agreement, independently of every other exclusion. If any one exclusion applies there should be no coverage, regardless of the inferences that might be argued on the basis of exceptions or qualifications contained in other exclusions. Therefore, the exception in (a) (recognizing coverage for breach of warranty) which is *expressly* limited to exclusion (a) remains subject to and limited by other related exclusions contained in the policy.

■ Although the exception in exclusion (a) indicates that the policy covers property damage flowing from a breach of warranty, it does not follow that *all* property damage caused by a breach of warranty is covered under the policy. The property damages covered can only be determined by resort to the contract as a whole, including all exclusionary provisions. *Taylor v. American Underwriters, Inc.,* (1976) Ind.App., 352 N.E.2d 86; *Bowen v. Farmers Mutual Insurance Co. of Mulberry,* (1936) 101 Ind.App. 362, 199 N.E. 426. Since exclusions (n) and (*o*) exclude property damage occurring to an insured's product or work which is caused by the insured's defective product or workmanship, no coverage is provided for such

damage. This is true whether the theory of recovery is breach of warranty or some other basis. Accordingly, we can find no internal ambiguity in exclusion (a). When read in concert with exclusions (n) or (o), we similarly find no ambiguity or conflict.

What *is* covered by the policy is defective workmanship which causes personal injury or property damage not excluded under some provision of the policy. So if the insured's breach of an implied warranty results in damage to property *other* than the insured's work or product which is excluded by exceptions (n) and (o), the policy would provide coverage. To hold otherwise would effectively convert the policy into a performance bond or guarantee of contractual performance and result in coverage for repair and replacement of the insured's own faulty workmanship. This was not the intent and understanding of the parties at the time the policy was purchased.

As the New Jersey Supreme Court pointed out in *Weedo, supra*, the two risks involved are quite different and the costs attendant upon the repair or replacement of the insured's own faulty work is part of every business venture and is a business expense to be borne by the insured-contractor in order to satisfy customers. It is a business risk long excluded by comprehensive liability policies. Another form of risk in the insured-contractor's line of work is injury to people and damage to other property caused by the contractor's negligence or defective product. It is this risk which the policy in question covers.

In this regard Prof. Henderson of the University of Nebraska Law School has remarked:

"The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. . . . The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained." Henderson, "Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know," 50 Neb.L. Rev. 415, 441 (1971).

The same neglectful craftmanship may cause both a business expense of repair and a loss represented by damage to persons and property other than the insured's own product or work. If, as in this case, the damage is confined to the insured's own product or work, it is a business risk and expense not intended to be covered under the policy and is excluded by exceptions (n) and (o).

"[T]he policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident." *Weedo v. Stone-E-Brick, Inc., supra*, 405 A.2d at 796.

Accordingly, we hold that the Indiana Insurance Company policy did not intend to, nor did it provide coverage to include reimbursement to a builder for expenditures required to correct, repair or replace his own poor workmanship.

## II.

Having decided that the coexistence of the exception to exclusion (a) and exclusions (n) and (o) create no ambiguity, it becomes necessary to decide if exclusions (n) and (o) are applicable to exclude the entire damages claimed in this case or merely a portion of those damages. The Court of Appeals did not address this issue because it found ambiguity when the exclusion clauses were read in conjunction with the exception to (a). The trial court found that exclusion (n) did not apply to the DeZutti claim and that exclusion (o) did not apply to the entire house as being Gilson's work, but only applied to exclude damage to the footing itself which was the component part out of which the loss arose.

Exclusion (n) denies coverage:

"to property damage to the named insured's products arising out of such products or any part of such products . . ."

The "named insured's products" are defined in the Definitions section of the policy as:

". . . goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof . . . ."

Exclusion (*o*) is similar to (n) and denies coverage:

"to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith . . . ."

These provisions clearly exclude insurance coverage for damages to the insured's product or work when such damages are confined *to* the product or work and caused *by* the product or work, or *any part thereof.* It is only damage to *other* property arising out of the insured's product or work which would be covered.

The difference between exclusions (n) and (*o*) is that the term "work" refers to the negligent or incorrect manner in which the job was done, whereas "product" means that the item made or sold is somehow defective or deficient in itself. In the instant case, because the damage to the house was allegedly caused by the improper construction of the footings in that they were not laid in hardpan soil, exclusion (*o*) rather than (n) is more applicable.

The issue as applied to the facts of this case is whether exclusion (*o*) applies to the damage to the entire house as being Gilson's "work" or only applies to the footing which was the component part out of which the loss arose. The answer depends upon the meaning of the insured's "work" which obviously is determined by who the insured is.

Gilson is a general contractor and his product or work must be the entire project or house which he built and sold. The exclusion for damages to his work arising from the product or work itself will necessarily be broader than a subcontractor's exclusion. A subcontractor's product or work is merely a component part of a larger work or product. Thus, a subcontractor's exclusion would be less encompassing and any damage to the larger work or item caused by his product or work would be damage to other property which would fall outside exclusions (n) or (*o*) and be covered. In both situations the exclusion applies to what the insured or those on his behalf worked upon or produced.

█ The trial court may have erroneously relied upon cases cited by Gilson involving subcontractors rather than general contractors, a factor which would alter the meaning of "product" or "work" in relation to those parties. Because Gilson was the general contractor over the construction of the entire residence, his finished product or work was the entire house, including the footings. The footing was a component part of Gilson's product or work done on his behalf and the policy clearly states that damages to the product or work arising from a *part* of the product or work are excluded from coverage.

The law on this issue is clearly with Indiana Insurance Company. The courts examining these identical exclusions have consistently found that exclusions (n) and (*o*) deny coverage for damages to the insured's entire product or work where such damages arise from that product or work or from any part thereof. *See e. g. B. A. Green Const. Co., Inc. v. Liberty Mutual Ins. Co.,* (1973) 213 Kan. 393, 517 P.2d 563, where the entire library was the insured general contractor's work and water damage to the library interior caused by the malfunction of an air conditioner installed by a subcontractor was excluded; *Eulich v. Home Indemnity Co.,* (Tex.Civ.App.1973) 503 S.W.2d 846, where the entire building was the insured general contractor's work and damage to the building which collapsed due to a faulty steel member was excluded; *Vobill Homes, Inc. v. Hartford Accident and Indemnity Co.,* (La.App.1965) 179 So.2d 496, where the entire cost of repairing defects due to a defective slab foundation was excluded; and *McGann v. Hobbs Lumber Company,* (1965) 150 W.Va. 364, 145 S.E.2d 476, where damages to a home caused by the collapse of the foundation wall were excluded.

The trial court below also apparently relied upon outdated cases cited by Gilson which pertain to a pre-1966 standard business risk exclusionary clause which is now nonexistent but which contained the ambiguous phrase "out of which the occurrence arises." The older cases found the exclusion was inapplicable to the insured's entire product and only excluded coverage for damages to the defective part out of which the loss arose. *See e. g. Liberty Building Co. v. Royal Indemnity Co.*, (1960) 177 Cal. App.2d 583, 2 Cal.Rptr. 329. In 1966 that ambiguous phrase was removed and the single exclusion was split into the two separate exclusions which are the subject of the instant case. Cases relying on the pre-1966 language as the basis for finding some coverage under the policy are no longer applicable. Under the language of the post-1966 standard exclusions, there is no support for the argument that the damages to be excluded are only the damages to the component part itself.

Accordingly, we hold that exclusion (*o*) excludes coverage for damage to the insured's work, or work done on his behalf, resulting from the work itself or any part of the work; that Gilson's work (or product) was the entire house and the damages to the house caused by the improper construction of the footings done on Gilson's behalf are not covered under Gilson's policy.

Indiana Insurance Company's petition to transfer is granted and the decision and opinion of the Court of Appeals are hereby vacated. The judgment of the trial court is reversed and the cause remanded to the trial court with instructions to vacate its judgment and enter judgment in favor of Indiana Insurance Company in accord with this opinion.

Judgment reversed and cause remanded with instructions.

GIVAN, C. J., and PRENTICE and PIVARNIK, JJ., concur.

DeBRULER, J., not participating.