**VARI BUILDERS, INC., t/a Vari Construction Co., Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

Superior Court of Delaware, New Castle County.

Submitted: Aug. 27, 1986.
Decided: Dec. 18, 1986.

Lawrence A. Ramunno, of Ramunno & Ramunno, Wilmington, for plaintiff.

James F. Kipp, and Robert K. Pearce, of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, for defendant.

O'HARA, Judge.

This is the Court's decision on defendant United States Fidelity and Guaranty Company's ("USF & G") motion for summary judgment. For the reasons stated herein, the motion is granted.

The action underlying the motion is one for a declaratory judgment in which Vari Builders, Inc. ("Vari") seeks coverage and defense from USF & G in a suit against Vari by David D. Smith and Jane R. Smith. According to the allegations in the Smith action, the Smiths and Vari entered into a written contract in which Vari agreed to construct a home and sell the home and lot to the Smiths. The Smiths contend, *inter alia,* that Vari failed to construct the home in a workmanlike manner and that, as a result, the Smiths were forced to expend thousands of dollars to repair and reconstruct the home. The Smiths additionally allege damage to their personal property as a result of the collapse of the basement and demand compensation for expenditures incurred for storage and substitute living quarters.

Vari has turned to USF & G for coverage and defense in the Smith suit on the basis of a Comprehensive General Liability ("CGL") insurance policy providing coverage for bodily injury or property damage liability for Vari's operations at specific locations. The policy reads in pertinent part:

> The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of
>
> A. bodily injury or
> B. property damage
>
> to which this insurance applies, caused by an occurence, and the Company shall have the right and duty to defend any suit against the Insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless. . . .

The exclusions section of the policy states in part:

> This insurance does not apply:
>
> (a) to liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a written warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner;
>
> .　　.　　.　　.　　.
>
> (n) to property damage to the Named Insured's products arising out of such products or any part of such products;

(*o*) to property damage to work performed by or on behalf of the Named Insured arising out of the work of any portion thereof, or out of materials, parts or equipment furnished in connection therewith. . . .

Attached to the policy is a Broad Form Comprehensive General Liability Endorsement which modifies the policy by replacing exclusion (*o*) with the following exclusion:

(3) with respect to the completed operations hazard and with respect to any classification stated in the policy or in the company's manual as "including completed operations", to property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such material, parts or equipment furnished in connection therewith.

USF & G now seeks summary judgment in the declaratory judgment action on the ground that the exclusions set forth at (n) and modified (*o*) apply to exclude coverage with respect to the damage to the house and the incidental expenses relating to storage and substitute living quarters.[1] In response, Vari contends that language contained in exclusion (a) conflicts with language in modified (*o*) to create an ambiguity which must be resolved in the insured's favor. Alternatively Vari contends that the modified exclusion (*o*) contained in the Broad Form endorsement provides a basis for coverage in the instant case.

Exclusions similar to those appearing in the policy at issue are commonly referred to as "business risk" exclusions and have been widely recognized as a valid limitation on coverage in general liability insurance policies. In the context of this case the exclusions are designed to protect insurers from contractors' attempts to recover funds to correct deficiencies caused by the contractors' questionable performance. Their use demonstrates the insurers' belief that the cost of not performing well is a cost of doing business and not considered part of the risk sharing scheme for which

general liability policies are written. The distinction between the two risks contemplated by insurers—one intended for coverage and the other targeted for exclusion by provisions of the type used here—is well articulated in Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb.L.Rev. 415 (1971) as follows:

The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property *other* than to the product or completed work itself, and for which the insured may be found liable. The insured, as a source of goods or services, may be liable as a matter of contract law to make good on products or work which is defective or otherwise unsuitable because it is lacking in some capacity. This may even extend to an obligation to completely replace or rebuild the deficient product or work. This liability, however, is not what the coverages in question are designed to protect against. *The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.*

*Id.* at 441 (emphasis added).

Business risk exclusion clauses have repeatedly been held to insulate the insurer from exposure where the work product of the insured is the subject of the claim. *See, e.g., Biebel Brothers, Inc. v. United States Fidelity & Guaranty Co.*, 8th Cir., 522 F.2d 1207 (1975); *St. Paul Fire & Marine Insurance Co. v. Coss*, Cal.App., 80 Cal.App.3d 888, 145 Cal.Rptr. 836 (1978); *LaMarche v. Shelby Mutual Insurance Co.*, Fla.Supr., 390 So.2d 325 (1980); *Indiana Insurance Co. v. DeZutti*, Ind. Supr., 408 N.E.2d 1275 (1980); *Green Construction Co., Inc. v. Liberty Mutual Insurance Co.*, Kan.Supr., 213 Kan. 393, 517

---

1. USF & G concedes that it owes coverage and a defense regarding the claim for personal property damage and does not now seek summary judgment as to this issue.

P.2d 563 (1973); *Vobill Homes, Inc. v. Hartford Accident & Indemnity Co.*, La. App., 179 So.2d 496 (1965), *cert. denied,* 248 La. 698, 181 So.2d 398 (1966); *Weedo v. Stone–E–Brick, Inc.*, N.J.Super., 81 N.J. 233, 405 A.2d 788 (1979); *Haugan v. Home Indemnity Co.*, S.D.Supr., 197 N.W.2d 18 (1972); *Nationwide Mutual Insurance Co. v. Wenger*, Va.Supr., 222 Va. 263, 278 S.E.2d 874 (1981).

■ Vari argues that the language under exclusion (a) stating that "this exclusion does not apply to a written warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner" conflicts with exclusion (n) and modified (o). The conflict, Vari suggests, creates an ambiguity that should be resolved in favor of the insured. Several jurisdictions have concluded that similar language creates such an ambiguity and have held the business exclusion provisions ineffective. *See, e.g., Custom Roofing Co., Inc. v. Transamerica Insurance Co.*, Ariz. App., 120 Ariz. 196, 584 P.2d 1187 (1978); *Fontainebleau Hotel Corp. v. United Filigree Corp.*, Fla.App., 298 So.2d 455, *cert. denied,* 303 So.2d 334 (1974); *Commercial Union Assurance Cos. v. Gollan*, N.H. Supr., 118 N.H. 744, 394 A.2d 839 (1978). In order to find that an ambiguity exists, however, the Court must read exclusion (a) to extend coverage to the repair and replacement of the insured's own faulty workmanship. Such a reading has been criticized as contrary to generally accepted insurance principles. In *Weedo v. Stone–E–Brick,* supra, the New Jersey Supreme Court observed that

> [t]his interpretation relies on the supposition that the exception to exclusion "(a)" —"but this exclusion does not apply to a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner"—*grants* coverage for claims based on the warranty described. Not so. The contention runs directly counter to the basic principle that exclusion clauses *subtract* from coverage rather than grant it.

*Id.,* 405 A.2d at 795 (emphasis in original). A similar conclusion has been reached in other jurisdictions. *See, e.g., St. Paul Fire & Marine Insurance Co. v. Coss,* 145 Cal. Rptr. at 841; *Indiana Insurance Co. v. DeZutti,* 408 N.E.2d at 1278; *Haugan v. Home Indemnity Co.,* 197 N.W.2d at 22. The latter view is persuasive in that it avoids ambiguity and gives effect to each provision in the policy. The Court therefore adopts this view and concludes that no ambiguity is created by the language of exclusion (a).

■ Vari contends in the alternative that because the clause designed to replace policy exclusion (o) excludes property damage to work performed "by the named insured", the exclusion does not apply to damage to work performed resulting from deficient performance by subcontractors. This issue was addressed in *Indiana Insurance Co. v. DeZutti,* supra. There the Indiana Supreme Court explained that

> [the general contractor's] product or work must be the entire project or house which he built and sold. The exclusion for damages to his work arising from the product or work itself will necessarily be broader than a subcontractor's exclusion. A subcontractor's product or work is merely a component part of a larger work or product. Thus, a subcontractor's exclusion would be less encompassing and any damage to the larger work or item caused by his product or work would be damage to other property which would fall outside exclusions (n) or (o) and be covered. In both situations the exclusion applies to what the insured or those on his behalf worked upon or produced.

408 N.E.2d at 1280. This Court agrees with the position taken by the Indiana Court and accordingly holds that damage to any part of the house itself is damage to the work of the insured which is excluded from coverage by the modified exclusion (o) contained in the endorsement.

■ Lastly Vari contends that the additional expenses incurred by the Smiths in storing their personal property and in securing substitute living quarters are not

excluded from coverage under the terms of the policy.

As previously noted, the insurer's duty of coverage extends to "damages because of ... property damage to which this insurance applies...." A plain reading of this clause suggests that the insurer is required to defend and indemnify its insured for all claims for damage, including consequential damage, that are causally related to an item of property damage which 1) satisfies the policy's definition of property damage; and 2) is included within the coverage. *Cf. Federated Mutual Insurance Co. v. Concrete Units, Inc.,* Minn.Supr., 363 N.W.2d 751, 757 (1985). On the present facts the property damage predicating the consequential damages is specifically excluded from coverage by the business risk provisions previously discussed. Therefore damages flowing from such property damage are not covered by the policy.

In conclusion the Court holds that under the terms of the applicable CGL policy, USF & G owes no defense or indemnity for claims asserted against its insured, Vari Builders, Inc., for damages to the Smith house. The policy similarly insulates USF & G from potential liability with respect to the consequential damages asserted against Vari. Accordingly, USF & G's motion for summary judgment is hereby granted.

IT IS SO ORDERED.