IT IS FURTHER ORDERED that defendants' motion for summary judgment shall be and it is granted.

IT IS FURTHER ORDERED that defendants' motion to set pre-trial conference shall be and it is denied as moot.

IT IS FURTHER ORDERED that defendants' motion to strike jury demand shall be and it is denied as moot.

GREEN CONSTRUCTION
COMPANY, Plaintiff,

v.

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH,
PENNSYLVANIA, Defendant.

No. 89–0981–CV–W–3.

United States District Court,
W.D. Missouri, W.D.

July 30, 1991.

Dale R. Martin, Joseph J. Strauss, Barokas & Martin, Seattle, Wash., Patrick L. Dunn, Niewald, Waldeck & Brown, Patrick E. Hartigan, Craft, Fridkin & Rhyne, Kansas City, Mo., Art Stone, Pistorius & Stone, Dallas, Tex., for plaintiff.

Thomas R. Larson, Watson, Ess, Marshall & Enggas, Kansas City, Mo., Lewis Melahn, Div. of Ins., State of Missouri, Jefferson City, Mo., Robert W. Cotter, Dysart, Taylor, Penner, Lay & Lewandowski, P.C., Kansas City, Mo., for defendant.

## MEMORANDUM OPINION AND ORDER

ELMO B. HUNTER, Senior District Judge.

■ This is a declaratory judgment action. Green Construction Company seeks a declaration of National Union Fire Insurance Company's duty to defend Green in other litigation and to indemnify it for any judgment obtained against Green in that litigation. The issues of liability—both coverage and the duty to defend—have been submitted on stipulated facts and cross-motions for summary judgment. Because the parties have stipulated to all the material facts in this case, there is no genuine dispute of fact, and the case is ripe for

summary judgment. For the reasons stated below, Green's motion for summary judgment is granted and National Union's motion for summary judgment is denied.[1]

## I. STIPULATED FACTS

In 1985, Green contracted with Kansas Power & Light Company (KPL) to build a dam. The construction was completed in 1986, but thereafter the dam settled and sometime during 1986 cracks were discovered in it. Eventually KPL had to demolish the dam and rebuild it. The cause of the settling was the inadequacy of soil incorporated into the dam. According to the results of laboratory tests performed by Terracon and Schwab/Eaton during construction of the dam, the soil met the contract specifications. It was later discovered, however, that the soil *did not* meet the contract specifications. Stipulation of Facts, Exhibit 29, Consultants Committee Report at 22, ¶ 5.

In 1987, Green sued KPL in federal court in Kansas for unpaid contract proceeds due under the construction contract. KPL counterclaimed in April, 1987, for breach of contract, negligence, and strict products liability; in essence, KPL was seeking recovery of damages it suffered as a result of the damage to the dam. In May, 1987, Green informed its insurance brokers of KPL's counterclaim, and by early June, Green's brokers had informed National Union of KPL's counterclaim. Green considered KPL's counterclaims to be claims covered under its general liability policy and requested National Union to defend against the counterclaims. Almost one year later, National Union denied both the claim for coverage and the request that National Union defend against the counterclaims. National Union gave two reasons for the denial: 1) because the alleged property damage occurred prior to the effective coverage date; and 2) because the kind of damage involved was not covered under the terms of the policy. National Union

1. Under Missouri choice of law rules, a general liability insurance policy is governed by the law of the state "which the parties understood to be the principal location of the insured risk." *Crown Center Redevelopment Corp. v. Occiden-* *tal Fire & Casualty Co.,* 716 S.W.2d 348, 358 (Mo.Ct.App.1986). In the present case, the location of the insured risk was in Kansas, and the parties agree that Kansas law applies.

has since conceded that the damage occurred during the coverage period. The parties agree that the two issues [2] presented by this case are: 1) whether KPL's claims against Green are covered under the terms of the policy; and 2) whether National Union had a duty to defend against KPL's counterclaims against Green.[3]

## II. THE DUTY OF AN INSURER TO DEFEND

■ Under Kansas law, an insurer has a duty to defend an insured if "any facts brought to its attention or any facts which it could reasonably discover ... give rise to a 'potential of liability' under the policy...." *Spruill Motors, Inc. v. Universal Underwriters Ins. Co.*, 212 Kan. 681, 512 P.2d 403, 407 (1973). "The possibility of coverage may be remote, but if it exists, the company owes the insured a defense." *Patrons Mutual Ins. Ass'n. v. Harmon*, 240 Kan. 707, 732 P.2d 741, 744 (1987). Thus, since only the "remote possibility" of coverage triggers an insurer's duty to defend, when a claim is indisputably covered, there can be no question that there is a duty to defend. In this case, because the Court finds that the claims against Green are covered, National Union owed to Green a duty to defend it in the litigation with KPL.

## III. THE ISSUE OF COVERAGE

The policy in dispute is a standard form comprehensive general liability (hereinafter "CGL") policy. Stipulation of Facts ¶ 3. The policy broadly covers:

**2.** Green split its action into five counts. Count Five, asserted against Employers Insurance of Wasau, was previously dismissed. Count I regards National Union's duty to defend, Count II regards National Union's duty to indemnify Green for damages assessed against it for damage to the dam, Count III regards National Union's duty to indemnify Green for damages assessed against it for KPL's loss of use of the dam, and Count IV regards National Union's duty to indemnify Green for damages assessed against it for breach of warranty.

Count III, the loss of use claim, is no longer in issue. KPL did not pursue a claim of loss of use

all sums which the insured shall become legally obligated to pay as damages because of
A. bodily injury or
B. property damage
to which this insurance applies, caused by an occurrence....

Stipulation of Facts, Exhibit 2. National Union contends that there was no "occurrence" within the meaning of the contract and, even if there were an occurrence, several exclusions in the policy operate to eliminate coverage for this "occurrence."

### A. DEFINITION OF OCCURRENCE

■ First, National Union contends that the settling of the dam is not an "occurrence" because the settling of the dam was not an "accident." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to conditions, which results in ... property damage neither expected nor intended from the standpoint of the insured." An "accident" has long been recognized to include events other than just those "happening suddenly and violently." J. Appleman, 7A *Insurance Law and Practice* § 4492 (1979). "Damage within the coverage of a liability insurance policy may include that resulting from the insured's negligence...." *Taylor-Morley-Simon, Inc. v. Michigan Mutual Ins. Co.*, 645 F.Supp. 596, 599–600 (E.D.Mo. 1986). An "accident," as that term is used in standard CGL policies "means that which happens by chance or fortuitously, without intention or design, and which is unexpected, unusual and unforeseen...." *Missouri Terrazzo Co. v. Iowa National Mutual Ins. Co.*, 566 F.Supp. 546, 552 (E.D.Mo.1983).

in the underlying litigation. Accordingly, the Court need not address the issue of insurance coverage for KPL'S loss of use claims against Green. Count III will be dismissed as moot.

**3.** In its complaint, Green also seeks a declaration as to whether KPL's claims against Green are covered under the terms of the insurance policy. Although Green has successfully defended the claims against it in the underlying litigation, KPL has appealed. Accordingly, the duty to indemnify is still in issue. Transcript of Oral Argument of March 22, 1991, at 6.

Although Kansas courts have not squarely addressed the issue, the Kansas Supreme Court, interpreting the standard definition of "occurrence," held that "[u]nder this policy, coverage is avoided only when an act results in intentional injury." *Spruill*, 512 P.2d at 408. In a case similar to the present one, the Minnesota Supreme Court held that damages caused by the settling of a building resulting from negligent construction constituted an "occurrence"[4] within the terms of the policy. *Ohio Casualty Ins. Co. v. Terrace Enterprises, Inc.*, 260 N.W.2d 450 (Minn.1978). That court reasoned that because the builder's conduct was not reckless or intentional, the settling came within the policy definition of "occurence" which included an event "neither expected nor intended from the standpoint of the insured." *Id.* at 452–453.

In the present case, the settling of the dam was not caused by the reckless or intentional conduct of Green, Terracon, or Schwab/Eaton. Indeed, it was not caused by the conduct of Green at all; it was caused by the condition of the soil incorporated into the dam. Green used that soil due to the faulty test results returned by Terracon and Schwab/Eaton. It is beyond peradventure that Green did not "expect or intend" that Terracon and Schwab/Eaton return inaccurate soil tests, nor did Green "expect or intend" that the soil would not meet contract specifications. Hence, the settling of the dam was an "occurrence" within the meaning of the policy.

## B. THE POLICY EXCLUSIONS

National Union also relies upon exclusions (n) and (p) and exclusions VI(A)(2)(d)(iii) and VI(A)(3)[5] in the Broad Form Comprehensive General Liability endorsement. For the reasons stated below, each of these arguments is rejected.

## 1. THE "SISTERSHIP" EXCLUSION

■ National Union contends that paragraph (p) excludes coverage for the damage to the dam. Paragraph (p) excludes coverage for:

> damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

This exclusion is referred to as the "sistership exclusion." L. Frumer and M. Friedman, 3B *Products Liability* § 58.03[4]. "On its face this exclusion might seem applicable.... The history and purpose of the exclusion reveal, however, that it has no applicability in the present case." *Honeycomb Systems, Inc. v. Admiral Ins. Co.*, 567 F.Supp. 1400, 1406 (D.Me.1983). The *Honeycomb* court, faced with the very exclusion which is in dispute here, explained the significance of the sistership exclusion:

> [It] is designed to limit the insurer's exposure in cases where, because of the actual failure of the insured's product, similar products are withdrawn from use to prevent the failure of these other products, which have not yet failed but are suspected of containing the same defect. *The exclusion does not apply to*

**4.** The definition of "occurrence" used in *Ohio Casualty* was that found in the 1966 standard CGL policy. The definition used in the present case is the 1972 CGL policy definition. *See* J. Appleman, *supra*, § 4492.

**5.** Exclusion VI(A)(3) in the Broad Form Comprehensive General Liability endorsement replaces the standard exclusion, paragraph (*o*). Paragraph (*o*) excludes coverage for "property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or

equipment furnished in connection therewith." The replacement exclusion, VI(A)(3), excludes coverage for "property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished therewith." Thus, the replacement exclusion only excludes coverage for property damage to work performed by the named insured and does not defeat coverage for property damage to work performed *or on behalf of* the named insured. *See infra*.

**1004**

*the product that failed, only to the "sister" products.*

*Id.* at 1406–07 (citations omitted; emphasis added). Thus, in the present case, the exclusion does not apply to Green's work— and there is no "sister" work to which it could conceivably apply.

## 2. THE "INJURY TO PRODUCT" AND "INJURY TO WORK" EXCLUSIONS

■ Paragraph (n) excludes coverage for "property damage to the named insured's products arising out of such products or any part of such products." Some courts have held that real property, such as a building, is not a "product" within the meaning of the standard form CGL policy. *Johnson v. National Union Fire Ins. Co.,* 56 Misc.2d 983, 289 N.Y.S.2d 852 (Sup.Ct. 1968), *aff'd,* 33 A.D.2d 924, 309 N.Y.S.2d 110 (N.Y.App.Div.1970); *Kissel v. Aetna Cas. & Sur. Co.,* 380 S.W.2d 497 (Mo.Ct. App.1964). Other courts have held that the definition of "product" does include a building contractor's work product. *Westman Industrial Co. v. Hartford Insurance Group,* 51 Wash.App. 72, 751 P.2d 1242 (1988); *Indiana Ins. Co. v. De Zutti,* 408 N.E.2d 1275 (Ind.1980); *J.G.A. Construction Corporation v. Charter Oak Fire Ins. Co.,* 66 A.D.2d 315, 414 N.Y.S.2d 385 (1979).

The "injury to product" and "injury to work" [6] exclusions are standard exclusions intended to limit two kinds of coverage which in recent years have been added to CGL policies. The standard CGL policies now automatically include products hazard insurance and completed operations insurance. L. Frumer, *supra,* § 58.01 at p. 58–4. The former is to protect the insured from liability for damages caused by his defective products, and the latter is to pro-

tect him from liability for damages caused by his faulty or defective work.[7] *Id.* at p. 58–5. While the standard CGL is designed to protect the insured from claims arising out of a defective product or faulty work, the product or work itself is not an item usually covered. Damage to the product caused by a defect in the product and damage to the work due to faulty work are normally excluded from coverage by the "injury to product" and "injury to work" exclusions, respectively. Paragraph (n) is the standard "injury to product" exclusion.

Clearly, the definition of "product," as it is used in the "injury to product" exclusion, should mirror the definition of "product" employed with respect to the products hazard coverage because of the close relationship between the products hazard coverage and the "injury to product" exclusion. Because products hazard coverage is intended to cover an insured's liability for defective products, a "product," within the meaning of the standard CGL and in the absence of any definition to the contrary, should include any item "manufactured, sold, handled or distributed by the named insured" for which an insured might be liable on a products liability theory.[8] *Accord Friestad v. Travelers Indem. Co.,* 260 Pa.Super. 178, 393 A.2d 1212, 1217 (1978) ("[I]t is more preferable by far to define the products hazard in terms of products liability law, and apply the exclusion only when a product, rather than a service, is the *cause in fact* of damages or injury to a third person."). Thus, it becomes necessary to determine what constitutes a "product" for purposes of products liability law in order to determine what constitutes a "product" within the meaning of an "injury to product" exclusion.[9]

---

**6.** The "injury to work" exclusion in the policy in the present case is paragraph VI(A)(3) in the Broad Form endorsement.

**7.** An example of faulty work, as opposed to a defective product, would be a plumbing contractor's installation of plumbing which leaks as a result of the defective method of installation and not as a result of any defect in the plumbing itself. *See* L. Frumer, *et al., supra.*

**8.** The policy defines "named insured's products" as "good or products manufactured, sold, handled or distributed by the named insured...."

**9.** Incredibly, one court has held that "[w]hether an item built by a manufacturer should be considered a product for purposes of strict liability is a very different question from whether an item built by an insured should be considered a product for purposes of a product exclusion in a general liability policy." *Westman Industrial Co. v. Hartford Ins. Group,* 51 Wash.App. 72, 751

Generally, products liability has been restricted to the sale of chattels. L. Frumer, et al., 1A *Products Liability* § 3.03[4][b][ii]. A modern trend has been to extend products liability to builders engaged in the mass production of homes. *Id.* Despite this trend, however, there is no authority for the proposition that a contractor who builds a structure such as a dam may be held liable under a theory of products liability. Because a dam is not a "product" for purposes of products liability law, it is similarly not a "product" within the meaning of an CGL "injury to product" exclusion. This conclusion is buttressed by the insurance industry's own definition (which itself is strong evidence of the parties' intent): "The 1986 CGL form defines product so as not to include real property." Fire Casualty & Surety Bulletins, Prf–15 (Rearranged February, 1989).[10]

■ On the other hand, such a structure is "work," within the meaning of the "injury to work" exclusion. Paragraph VI(A)(3) of the Broad Form endorsement excludes coverage for "property damage to work performed by the named insured arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith." In *B.A. Green Construction Co. v. Liberty Mutual Ins. Co.*, 213 Kan. 393, 517 P.2d 563 (1973), the Kansas Supreme Court held that an entire library was the contractor's "work" within the meaning of a similar "injury to work" exclusion. Given the Kansas courts' broad interpretation of the word "work", the dam in the present case is clearly Green's "work" within the meaning of paragraph VI(A)(3).

Although damage to the dam arising out of the work performed by Green is indisputably excluded from coverage by paragraph VI(A)(3), Green argues that damage to the dam arising out of the work performed by others is not excluded from coverage. National Union has conceded that "the broad form endorsement may, in some circumstances, provide liability coverage where liability for the named insured arises out of work performed by a subcontractor." [11] National Union's Suggestions In Opposition to Plaintiff's Motion for Summary Judgment at 9–10. National Union has simultaneously taken the contrary position that the Broad Form endorsement's deletion of the phrase "or on behalf of" is insignificant and has urged the Court to follow those courts which have held that the Broad Form endorsement "injury to work" exclusion is no less broad than the standard "injury to work" exclusion.[12]

P.2d 1242, 1246 (1988). Product exclusions in CGLs are meant to narrow the scope of products liability coverage that the policy provides. Consequently, the question of what constitutes a "product" for purposes of a product exclusion is inextricably bound up in the question of what constitutes a product for products liability law.

**10.** The ambiguity of the word "product" and the phrase "named insured's products" is itself reason enough to construe this policy provision in favor of Green, the insured. *Anderson v. Nationwide Life Ins. Co.,* 6 Kan.App.2d 163, 627 P.2d 344 (1981).

It is also interesting to note that the broad definition of "product" which National Union proposes would have the effect of precluding coverage under the completed operations feature of the Broad Form endorsement for which Green paid an additional premium. "[U]nlike the 'products exclusion,' ... the 'work performed' exclusion was altered to provide coverage for service supplied by subcontractors." *Maryland Cas. Co. v. Reeder,* 221 Cal.App.3d 961, 270 Cal.Rptr. 719, 728 (1990). The protection that Green reasonably believed it was buy-

ing when it purchased the Broad Form endorsement cannot now be defeated by a strained definition of the word "product" in the "injury to product" exclusion.

**11.** Initially, National Union contended that the distinction between work performed by Green and work performed on behalf of Green "is meaningless because all of the dam construction was performed by Green." National Union's Suggestions In Opposition to Plaintiff's Motion for Summary Judgment at 10. National Union has since stipulated that Terracon and Schwab/Eaton performed soil testing for Green in connection with the construction of the dam. Supplemental Stipulation of Facts ¶ 2–6.

**12.** National Union also contended at oral argument that the damage to the dam arose out of the defective condition of materials used—the soil—rather than from any work performed by Green, Terracon or Schwab/Eaton. Thus, according to National Union, coverage is excluded under paragraph VI(A)(3) which excludes coverage for "property damage to work performed by the named insured arising out of ... such mate-

**1006**

Several courts have concluded that the Broad Form endorsement "injury to work" exclusion narrows the broad standard "injury to work" exclusion. *Maryland Cas. Co. v. Reeder*, 221 Cal.App.3d 961, 270 Cal. Rptr. 719 (1990); *Fireguard Sprinkler Systems, Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648 (9th Cir.1988); *W.E. O'Neil Construction Co. v. National Union Fire Ins. Co.*, 721 F.Supp. 984 (N.D.Ill.1989); *Mid–United Contractors, Inc. v. Providence Lloyds Ins. Co.*, 754 S.W.2d 824 (Tex.Ct. App.1988). Other courts, however, have held that the Broad Form endorsement "injury to work" exclusion does not narrow the scope of the standard "injury to work" exclusion. *Knutson Construction v. St. Paul Fire & Marine Ins.*, 396 N.W.2d 229 (Minn.1986); *Vari Builders, Inc. v. U.S. Fidelity and Guar. Co.*, 523 A.2d 549 (Del.Super.Ct.1986).[13] Those courts have attached no significance to the policy drafter's omission of the phrase "or on behalf of." As the Ninth Circuit noted, such an interpretation "does not square with the language of the endorsement: it ignores the careful drafting that characterizes insurance policies." *Fireguard*, 864 F.2d at 653.

Not only is this not sound contract interpretation, the resulting interpretation—that the Broad Form endorsement exclusion is no narrower than the standard exclusion—is directly at odds with the insurance industry's own interpretation of the phrase. According to the August, 1982, Fire Casualty & Surety Bulletins (FC & S Bulletins):

> [T]he exclusion eliminates coverage for property damage to work performed by the named insured if the property damage arises out of the named insured's work or any portion of it.

Thus, an insured *has* coverage for his completed work when the damage arises out of work performed by someone other than the named insured, such as a subcontractor.... The usual Completed Operations coverage (no Broad Form Property Damage endorsement attached) flatly excludes property damage to work performed by *or on behalf of* the named insured arising out of the work. Under the usual coverage, then, the insured has no insurance whatsoever for damage to a subcontractor's work or for damage to his own work resulting from a subcontractor's work. Therein lie the advantages of Broad Form Property Damage coverage including Completed Operations. Consequently, if an insured does not anticipate using subcontractors, the value of purchasing Broad Form Property Damage coverage *with Completed Operations* is questionable, in view of the additional premium required for it.

FC & S Bulletins Epb–7, –8 (August, 1982) (quoted in *Fireguard*, 864 F.2d at 652). More recently, the FC & S Bulletins has stated:

> When an insured purchases broad form property damage (including completed operations) coverage, one effect is that exclusion (*o*) is deleted and replaced by an exclusion of "property damage to work performed by the named insured arising *out of* such work *or* any portion thereof, or out of such materials, parts or equipment furnished in connection therewith." This is a deletion of the wording "or on behalf of" from exclusion (*o*).

> The meaning of this deletion is to restrict the exclusion's operation to property damage *to* the insured's own work

---

rials ... furnished in connection therewith." National Union has apparently abandoned this argument since it does not appear in any of National Union's written briefs submitted either before or after oral argument. At any rate, the argument fails because the defective "material" here—the soil—was not material *furnished* by Green or any other subcontractor or person performing work on behalf of Green. The soil was supplied by KPL. Stipulation of Facts, Exhibit 1, Addendum 1, ¶ 7, p. 2. Thus, the damage did not arise out of defective materials fur-

nished by Green. The damage did, however, indisputably arise out of Terracon's and Schwab/Eaton's faulty soil testing.

**13.** One case cited by National Union, *Indiana Ins. Co. v. De Zutti*, 408 N.E.2d 1275 (Ind.1980), involves the standard "injury to work" exclusion which is the very exclusion replaced by the Broad Form endorsement exclusion. Therefore, the *De Zutti* case is of no assistance in the interpretation of the Broad Form endorsement exclusion.

that *arises* out of the insured's own work. By this interpretation, a general contractor would be covered for damages to work performed by itself or any other contractor if the damage arose out of another contractor's work on the project. And, even if damage arose out of the insured's own work, the insured would be covered for damage to work performed by any contractor other than itself.

FC & S Bulletins, Prf–12 (Rearranged February, 1989). As the *Fireguard* court stated, the industry's interpretation of the exclusion "is strong evidence of the intent of the parties." *Id.* The Court agrees with Green that the better-reasoned cases are those, like *Fireguard,* which give effect to the carefully drafted language of the Broad Form endorsement. Paragraph VI(A)(3) does not exclude coverage to Green for any liability Green incurred for damage to its work arising out of work performed on its behalf.[14]

3. The "Faulty Workmanship" Exclusion

█ Finally, in a belatedly filed brief, National Union raises another exclusion in the Broad Form endorsement in an attempt to defeat coverage. Paragraph VI(A)(2)(d)(iii) excludes coverage for "that particular part of any property, ..., the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured." National Union contends that the exclusion applies here and defeats coverage. Green has argued, however, that paragraph VI(A)(2) does not apply to completed operations claims.

Because paragraph VI(A)(3) applies to completed operations, it is doubtful that paragraphs VI(A)(1) or (2) were also intended to cover completed operations. If paragraph VI(A)(2) were to apply to completed operations, then it would conflict with para-

graph VI(A)(3). Paragraph (A)(3) modifies the standard "injury to work" exclusion, narrowing the standard exclusion so that only damage arising out of the insured's own work is excluded. National Union's interpretation of paragraph (A)(2) would reinstate the standard "injury to work" exclusion and thus conflict with the parties' intent underlying paragraph (A)(3).

Because the policy is ambiguous with respect to whether paragraph (A)(2) applies to completed operations, it must be construed in favor of the insured not to cover completed operations. *American Media, Inc. v. Home Indem. Co.,* 232 Kan. 737, 658 P.2d 1015, 1018 (1983) ("Where terms of a policy of insurance are ambiguous or uncertain, conflicting or susceptible of more than one construction, the construction most favorable to the insured must prevail."). The insurance industry itself has recognized this ambiguity and has clarified the 1986 CGL policy so that the so-called "faulty workmanship" exclusion explicitly "does not apply to property damage included in the ... completed operations hazard." FC & S Bulletins, Prf–15 (February 1989). Moreover, this construction avoids any conflict between paragraphs (A)(2) and (A)(3). Of course, even if paragraph (A)(2) were construed to apply to completed operations, the policy would nevertheless have to be construed in favor of coverage because of the conflict such an interpretation would create between paragraphs (A)(2) and (A)(3). *American Media,* 658 P.2d at 1018.

## VI. CONCLUSION

For all of the foregoing reasons, the Court concludes that the policy in question does provide coverage to Green and that National Union had a duty to defend Green in the litigation with KPL. Accordingly, it is hereby

---

**14.** National Union emphasizes and relies heavily upon *B.A. Green Construction Co. v. Liberty Mutual Ins. Co.,* 213 Kan. 393, 517 P.2d 563 (1973), in its opposition to Green's motion for summary judgment. What the Kansas Supreme Court did in that case, however, is irrelevant to the issue here. The fact that the *B.A. Green* court broadly interpreted the standard exclu-

sion has no bearing whatsoever on what that court would do if faced with the more narrow Broad Form endorsement exclusion. It is unlikely that the Kansas courts would follow the Minnesota Supreme Court and the Delaware lower appellate court which have, in this Court's opinion, misinterpreted the Broad Form endorsement "injury to work" exclusion.

ORDERED that Green Construction Company's motion for summary judgment is GRANTED on Counts I, II, and IV and National Union's motion for summary judgment is DENIED. It is further

ORDERED that Count III is DISMISSED AS MOOT. It is further

ORDERED that a hearing on the amount of attorney's fees owed by National Union to Green Construction shall be held on August 28, 1991, at 10:00 a.m. at the United States Courthouse, Courtroom No. 8, 811 Grand Avenue, Kansas City, Missouri. The parties are directed to confer and stipulate as to the reasonable hourly rate and hours expended in the underlying litigation. Plaintiff Green Construction shall file on or before August 9, 1991, any suggestions addressing the question of attorney's fees, including any attorney's fees in the present litigation which may be recoverable as a part of this action. National Union shall then have to and including August 16, 1991, in which to file any suggestions in opposition. Green Construction shall have to and including August 23, 1991, in which to file any reply suggestions. It is further

ADJUDGED, DECLARED AND DECREED:

1) that National Union Fire Insurance Company of Pittsburgh is and was liable and bound to defend Green Construction Company against all claims, demands, and liability in connection with the counterclaims asserted against Green by Kansas Power & Light Company in the case Green Construction Company vs. Kansas Power & Light Company, No. 87–2070–S filed in the United States District Court for the District of Kansas and now pending before the United States Court of Appeals for the Tenth Circuit;

2) that National Union Fire Insurance Company of Pittsburgh is liable and bound to pay any and all amounts which Green Construction Company may be responsible or liable in connection with the above-mentioned litigation;

3) that National Union Fire Insurance Company of Pittsburgh is liable and bound to reimburse Green Construction Company for all reasonable amounts expended or paid by it which are attributable to, or associated with, defense of the Kansas Power & Light Company's counterclaims in the above-mentioned litigation.

IT IS SO ORDERED.