CLEMENTS AND MONTGOMERY, D. B. A. C. & M. CONTRACTORS, *v.*
THE AETNA CASUALTY & SURETY CO. ET AL.

[Cite as Clements v. Aetna Cas. & Surety Co.,
15 Ohio Misc. 252.]

(No. A-202026—Decided January 5, 1968.)

Common Pleas Court of Hamilton County.

*Messrs. Mebs & Altmayer, Messrs. Sand & Sand* and
*Mr. Fred Mebs*, for plaintiffs.
*Messrs. Rendigs, Fry, Kiely & Dennis* and *Mr. John
A. Kiely*, for defendant, The Aetna Casualty & Surety Co.
*Messrs. Gatch, Ritchie & Kleinman, Mr. William B.
O'Neal* and *Mr. Lewis G. Gatch*, for defendant, Kay Riesenberg Ruth.

KEEFE, J. This is an action for declaratory judgment.
The plaintiffs ask the court to order the defendant, The
Aetna Casualty & Surety Co. (hereinafter designated
Aetna) to pay a judgment secured by Kay Riesenberg
Ruth against the plaintiffs up to the policy limits. Aetna
failed to provide plaintiffs with legal representation in
this matter, failed and refused to undertake plaintiffs'

defense in the suit brought against them by Kay Riesenberg Ruth, and has refused to pay the judgment.

It is stipulated that Aetna did issue a policy of liability insurance to the plaintiffs, which policy was in force on November 16, 1961, and prior thereto. Plaintiffs, while insured under the policy, entered into an oral contract with a general contractor whereby plaintiffs agreed to dig a trench in Koenig Avenue, Reading, Ohio, lay a sewer line and refill the trench so dug with any material approved by the inspector of Reading, Ohio. Plaintiffs dug the trench, laid the sewer, refilled with the material that had been removed, all with the approval of the city inspector. Plaintiffs' contract did not call for blacktopping of the filled trench.

An ordinance of the city of Reading in full force and effect at the time of the accident required that a sewer trench be backfilled within 18 inches of the surface and then thoroughly flushed with water; that it then be filled to within 12 inches of the surface and again flushed; that after the second flushing there should be complete backfilling to the bottom of the paving foundation with dry material thoroughly rammed. Plaintiff did not flush the trench.

In the trial of the suit of Kay Riesenberg Ruth for injuries against the plaintiffs herein counsel for Mrs. Ruth produced an expert who testified that the fill had sunk because of failure to flush and tamp properly. This testimony was uncontroverted by any other expert testimony.

The work was all done in one day, November 14, 1961. It rained the following night, there being no evidence that the rain was anything but a normal one. On November 16, 1961, after the accident to Mrs. Ruth, plaintiffs learned of it from the police. Looking at the place, one of the plaintiffs found that the fill had either sunken several inches or had been washed out. To report the development, one of the plaintiffs called the general contractor's home. The wife of the general contractor advised that he was absent from the city. After one of the plaintiffs described the Koenig Avenue condition to the general contractor's wife, she

asked him to fill the trench with bank run and said her husband would pay for it. Plaintiffs did so, but were never paid for such work.

Kay Ruth's injuries were incurred when her automobile struck the sunken trench in the street.

Defendant says the work performed by plaintiffs was a completed operation prior to November 16, 1961, the date on which Mrs. Ruth had her accident. Defendant says the policy excludes a completed operation such as that with which we are involved. The plaintiffs maintain that the policy exclusion urged upon the court as freeing Aetna from liability has no application to contractors, such as the plaintiffs, who do not sell or deal with products but who are engaged in performing services.

The pertinent portion of the policy reads as follows:

"CONDITIONS. 3 (g) Products (including completed operations) Hazard. The term 'Products (including completed operations) Hazard' means

"(1) goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the accident occurs after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such accident occurs away from premises owned, rented or controlled by the named insured or on premises for which the classification stated in division (A) of the declarations excludes any part of the foregoing; provided, such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

"(2) operations, if the accident occurs after such operations have been completed or abandoned and occurs away from premises owned, rented or controlled by the named insured; provided, operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be 'operations' within the meaning of this para-

graph: (a) pick-up or delivery, except from or onto a railroad car, (b) the maintenance of vehicles owned or used by or in behalf of the insured, (c) the existence of tools, uninstalled equipment and abandoned or unused materials and (d) operations for which the classification stated in division (A) of the declarations specifically includes completed operations.''

There is also an endorsement attached to the policy and forming a part of it which reads as follows:

"ENDORSEMENT - GENERAL LIABILITY
EXCLUSION OF PRODUCTS HAZARD

"It is agreed that the policy does not apply to the Products (including completed operations) Hazard as defined therein. Forming a part of the policy to which attached from its date of issue."

From Aetna's standpoint, the most that can be said of the policy section and endorsement above is that they are ambiguous. A reasonable person picking up the subject policy and endorsement could well be in a quandary whether the exclusion of products hazard coverage applied to those engaged in performing services. There is language both in the policy itself and the endorsement which talks about "completed operations." All references to "completed operations" are so inextricably and so subordinately tied to the concept of a "product" and not services that the words "completed operation" have validity only with reference to "products." In this case we are concerned with services and not products.

The policy here has been prepared by Aetna. The significance of the ambiguity in it is that it must be strictly construed against the party who prepared it and that means that the exclusion does not apply to plaintiffs' services.

"Construction Against Party Drawing Contract or Selecting its Language.—A fundamental and frequently applied general rule of construction is that if there is doubt or ambiguity in the language of a contract the document is to be construed strictly against the party who prepared it or selected its language and in favor of the party who took no part in its preparation or in the selection of its lan-

guage. He who speaks should speak plainly or the other party may explain to his own advantage. This rule has been said to be applicable especially where the one drawing the contract is the only one who signs it. The language used in a contract will be construed most strongly against the party who drew it, notwithstanding it purports to originate with the other party. Where a party's agent selected the language employed in a contract, the construction thereof will be favorable to the other party.

"Ambiguous language in a contract written on a printed form prepared by one of the parties is to be construed most favorably to the other party. *An ambiguous provision in an insurance policy prepared by the insurer will be construed strictly against the insurer and liberally in favor of the insured.*" (Emphasis added.) 11 Ohio Jurisprudence 2d 391, Contracts, Section 147.

"Rule of Liberal Construction in Favor of Insured. It is one of the best known principles of insurance law that a policy or contract of insurance is to be construed liberally in favor of the insured or his beneficiary, and strictly as against the insurer." 30 Ohio Jurisprudence 2d 225, Insurance, Section 215.

"The rule that a policy or contract of insurance is to be construced liberally in favor of the insured and strictly against the insurer is based upon various reasons. The one most frequently advanced is that an isurance contract, the same as any written agreement, should, in case of doubt as to the meaning thereof, be interpreted against the party who has drawn it and who is responsible for the language employed therein, especially if the provision to be construed calls for a forfeiture. Other reasons mentioned are that a liberal construction in favor of the insured is most conducive to trade and business and moreover probably most consonant with the intentions of the parties, and that in accord with the presumed intention of the parties, the construction should be such as not to defeat, without a plain necessity, the insured's claim to the indemnity which it was his object to secure and for which he paid a premium." 30 Ohio Jurisprudence 2d 227, Insurance, Section 216.

"In Ohio, the rule of liberal construction against the

insurer and in favor of the intended indemnity has been applied to the various kinds of insurance including accident insurance; automobile insurance; burglary insurance; credit guaranty insurance; disability insurance; employers, liability or indemnity insurance; fidelity or guaranty insurance; fire insurance; liability or indemnity insurance; life insurance; theft insurance; and to contracts guaranteeing the performance of building contracts." 30 Ohio Jurisprudence 2d 228, Insurance, Section 217.

Attention is also directed to *Butche* v. *The Ohio Casualty Insurance Co.*, 174 Ohio St. 144, the third paragraph of the syllabus of which reads:

"Policies of insurance, which are in language selected by the insurer and which are reasonably open to different interpretations, will be construed most favorably for the insured."

As expressed above, the strongest case which Aetna can make is that its policy is only ambiguous in the respect indicated, and I respect that my finding is in favor of ambiguity. However, it can be urged with such reasonableness that the policy is not even ambiguous but that "completed operations" can *only* refer to goods or products. Would goods or products embrace such services as those performed by pliantiffs? Most of the cases which I find on this subject hold "no." Their rationale is convincing.

Citations for some of these cases are: *Liberty Mutual Insurance Co.* v. *Hercules Powder Co.*, 224 F. 2d 293 (Delaware); *Neilson* v. *Travelers Indemnity Company*, 174 F. Supp. 648 (Iowa); *King* v. *Mason*, 95 So. 2d, 705; *Kendrick* v. *Mason*, 99 So. 2d, 108 (both Mason cases from Louisiana); *Hoffman & Klemperer Co.* v. *Ocean Accident & Guarantee Corporation*, 292 F. 2d 324 (Illinois); *Jacoby* v. *U. S. Fidelity and Guaranty Co.*, 199 N. Y. S. 2d 537 (New York); *Maretti* v. *Midland National Insurance Co.*, 190 N. E. 2d 597 (Illinois); *Peerless Insurance Company* v. *Clough*, 193 Atlantic 2d 444 (New Hampshire); *McNally* v. *American States Insurance Co.*, 308 F. Reporter 2d 438 (Michigan); *McAllister* v. *Century Indemnity Co.*, 94 Atlantic 2d 345 (New Jersey); *Hercules Co.* v. *Royal*

*Indemnity Co.,* 171 F. Supp., 746 (New York); and *Kissell* v. *Aetna Casualty and Surety Co.,* 380 S. W. 2d 497 (Missouri).

Some of the language from the opinion in *Kissel* v. *Aetna* (1964), supra, is worth noting specially:

"It appears clear to us that when plaintiffs purchased the comprehensive general liability policy relied on by them for recovery in this case, they meant to purchase and obtain general contractors protection against comprehensive claims arising out of their work and services in the performance of building Our Lady of Good Counsel School, including tort claims arising from their excavating operations. By no stretch of legalistic nomenclature or business language or understanding can it be said that the plaintiffs either manufactured, sold, handled or distributed any products. Their business was clearly stated in the insurance policy as that of "contracting." From the very nature of their business one can only conclude that they performed services. To the average person the term products hazard can only mean a hazard arising out of the use of or the existence of any condition in goods or products manufactured, sold, handled or distributed by the insured. The suits filed against plaintiffs herein involve no such hazard but are based only and solely on alleged negligence in connection with the excavation of the premises in question . . . . When Murphy, the subcontractor, excavated the premises, he was performing a service and was not engaged in either manufacturing, selling, handling or distributing a product. Any contention to the contrary, under the facts in this case, is illogical, unsound and without good reason, and as said in the *Hercules case,* any exclusion which related to 'products' either sold, manufactured, handled or distributed by the insured would not be an exclusion which would relate to services performed out of which services the accident arose. We can do no better, in connection with the facts in the instant case, than to repeat what was said in the *Hercules case*: "No businessman (or other ordinarily intelligent person) reading this policy could reasonably assume from the rather ambiguous language used therein that the insured was not protected

against the natural consequence of any negligence on its part in the performance of its services which constituted its regular business. If there is any ambiguity in the policy it must be construed against the insurance company.' (Parenthesis ours.) (171 F. Supp. 1. c. 748). We rule that the terms of the policy fully protected plaintiffs against liability for acts of negligence committed by them or by their subcontractor during the performance of the contract. The negligence committed by Murphy in the grading of the toe of the slope or incline was the proximate cause of the damages later sustained by the property owners who sued plaintiffs and was in fact and in law committed during the performance of the work while the insurance contract was in force." Pages 506-7 of the opinion.

The *Hercules case* to which reference is made in this excerpt is 171 F. Supp. 746.

The policy exclusion as to "Products (including completed operations)" did not relate to the services performed by plaintiffs. Therefore it is unnecessary to determine whether the plaintiffs had in fact completed the operation.

I cannot find that the holdings of the cases cited by Aetna are helpful to it. They are largely concerned with facts involving completion or abandonment of operations, or products or goods. As has been said above, we do not get to the point where we must determine whether plaintiffs' trench digging was completed. That need be answered only if products are involved and we are concerned with services *without products.*

The terms of Aetna's policy protected plaintiffs. Aetna is to pay the judgment which Kay Riesenberg Ruth recovered against plaintiffs, also to pay plaintiffs' reasonable attorneys' fees in Mrs. Ruth's suit against them and the costs herein.

Counsel are respectfully requested to submit an appropriately endorsed entry.

*Judgment for plaintiffs.*