**FIREGUARD SPRINKLER SYSTEMS, INC., Plaintiff–Appellant,**

v.

**SCOTTSDALE INSURANCE COMPANY, Defendant–Appellee.**

No. 87–4039.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Sept. 13, 1988.

Decided Dec. 27, 1988.

Jacob Tanzer, Ball, Janik & Novack, Portland, Or., for plaintiff-appellant.

I. Franklin Hunsaker, Bullivant, Houser, Bailey, Pendergrass & Hoffman, Portland, Or., for defendant-appellee.

Before SCHROEDER, PREGERSON and LEAVY, Circuit Judges.

LEAVY, Circuit Judge:

## FACTS AND PROCEEDINGS

Wilkins, Kaiser & Olson (WKO) contracted with the appellant, Fireguard Sprinkler Systems, Inc. (Fireguard) to upgrade the fire sprinkling system at the WKO sawmill in Carson, Washington. The project included the construction and installation of a water reservoir tank. Fireguard hired a subcontractor, Blue Line Excavating Company (Blue Line), to prepare the site for a water reservoir tank and to engineer, construct, and install the tank. Blue Line in turn subcontracted part of the engineering work to MC2 Engineering Company (MC2). Blue Line then designed, constructed, and installed the water tank. After the project was completed, Fireguard turned it over to WKO, and WKO put it into operation.

A landslide totally destroyed the tank and other portions of the project.

WKO sued Fireguard, Blue Line, and MC2, alleging that their negligence, carelessness, negligent omissions, breaches of contract and other culpable conduct caused the landslide that damaged the tank and reservoir site. WKO sought to recover over $325,000 for repair and reconstruction.

At the time, Fireguard had a general liability policy with the appellees, Scottsdale Insurance Company (Scottsdale). Fireguard tendered the defense of the WKO action to Scottsdale. Scottsdale accepted the tender subject to a full reservation of its rights to contest the duty to defend or indemnify Fireguard. Scottsdale contended the policy did not cover losses resulting from the work of subcontractors.

Fireguard brought this action for declaratory relief, asking that Scottsdale be required to defend Fireguard and to insure its losses, if necessary. Fireguard moved for summary judgment, contending that the policy covered losses resulting from the work of subcontractors. Scottsdale filed a cross-motion for summary judgment. The district court granted Scottsdale's motion, denied Fireguard's, and entered a final judgment. Fireguard appeals.

## STANDARD OF REVIEW

This court reviews a grant of summary judgment de novo. *Darring v. Kincheloe,* 783 F.2d 874, 876 (9th Cir.1986).

## DISCUSSION

I. *The Completed Operations Hazard Exclusion*

■ The issue of first impression in this circuit is whether a "completed operations hazard exclusion" in an endorsement to a comprehensive general liability policy excludes coverage for damage to the work product, when the damage is caused by work performed by subcontractors. The exclusion is written in a standard form that is widely used in the insurance industry.

A completed operations hazard provision insures a general contractor against certain risks that occur after a construction project is finished and is in the owner's control. However, exclusions to such a provision typically preclude coverage for damage resulting to a contractor's own work.

Henderson, *Insurance Protection for Products Liability and Completed Operations—What Every Lawyer Should Know*, 50 Neb.L.Rev. 415, 441 (1971). Thus, the general contractor is covered only for damage to property he or she did not construct. *Southwest Forest Indus. v. Pole Bldg., Inc.*, 478 F.2d 185, 187 (9th Cir.1973). The idea behind this exclusion is that liability insurance should not be a warranty or performance bond for general contractors, because they control their work. *See id.* (rejecting the idea that insurance company should be a guarantor of the quality of the insured's work). The exclusion is thought to discourage careless work by making general contractors pay for losses caused by their own defective work.

The question here is whether work performed by subcontractors is also excluded, because, upon completion, it is part of the general contractor's work product, or whether that work is a separate insurable risk. Relying on cases from Minnesota, the district court concluded that work performed by subcontractors is not covered under the Scottsdale policy, because "the subcontractors performed under Fireguard's direction. At the time the WKO project was completed, the work performed by the subcontractors became Fireguard's work."

We disagree. The language of the policy and the insurance industry's interpretation of these exclusions show that Fireguard and Scottsdale intended to cover losses caused by the work of subcontractors.

*The Language of The Policy*

The Scottsdale policy provides:

The company will pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of

    A.  *bodily injury* or

    B.  *property damage*

to which this insurance applies, caused by an *occurrence*, and the company shall have the right and duty to defend any suit against the *insured* seeking damages on account of such *bodily injury* or *property damage.*

The policy describes the completed operations hazard coverage as follows:

"*[C]ompleted operations hazard*" includes *bodily injury* and *property damage* arising out of operations ... but only if the *bodily injury* or *property damage* occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the *named insured.* "Operations" include materials, parts or equipment furnished in connection therewith....

The policy has two parts: 1) the basic policy, for comprehensive general liability coverage and 2) an endorsement, for broad form property damage liability coverage. The endorsement provides additional coverage, which requires payment of an additional premium. Certain provisions in the endorsement replace provisions in the basic policy.

In the Scottsdale policy, the basic policy contains the following completed operations hazard exclusion, precluding coverage

(*o*) to property damage to work performed by *or on behalf of* the named insured arising out of the work or any portion thereof, or out of materials, parts of equipment furnished in connection therewith[.]

(Emphasis added.) The phrase "or on behalf of" refers to the work of subcontractors. This phrase is omitted in the endorsement in section VI(A)(3), which replaces exclusion "(*o*)" with the following language precluding coverage:

[W]ith respect to the *completed operations hazard* and with respect to any classifications stated in the policy or in the company's manual as "including completed operations," to *property damage* to work performed by the *named insured* arising out of such work or any portion thereof, or out of such materials, parts or equipment furnished in connection therewith.

The inclusion or deletion of the phrase "or on behalf of" is critical to the interpretation of this policy. Fireguard interprets the deletion in the endorsement to mean that the policy will not cover damage to work Fireguard performed, but will cover

damage to work the subcontractors performed. Scottsdale, on the other hand, contends Fireguard's interpretation ignores the fundamental purpose of comprehensive general liability insurance, which is intended only to provide coverage against potential liability for bodily injury or property damages *caused* by an insured's completed work, not damage to the work itself. That principle limits the scope of coverage under a comprehensive general liability insurance policy whether the completed work that sustains damage was completed by the insured or by the insured's subcontractors.

Fireguard argues that the language of the policy supports its interpretation, because: (1) the exclusion applies only to work performed "by the named insured" and it alone is the named insured; (2) the phrase "or on behalf of" would have included subcontractors' work if included in the endorsement, but its omission limits the exclusion to the named insured's work; and (3) the deletion in section VI(A)(3) of the endorsement was deliberate, because "on behalf of" appears in the immediately preceding paragraphs, sections VI(A)(1) and (2), of the endorsement.[1]

We conclude that Fireguard's interpretation of the policy is the correct one. The language of the completed operations hazard exclusion in the endorsement, as opposed to that in the basic policy, does not exclude from coverage the work performed by subcontractors. We cannot conclude that omission of the phrase "or on behalf of" in section VI(A)(3) of the endorsement has no significance. Because this phrase was deliberately deleted in one paragraph and retained in the immediately preceding paragraphs, we are persuaded that the exclusion in the endorsement applies only to work performed by the named insured. If Scottsdale wanted to exclude work performed by subcontractors in the endorsement of this carefully drafted policy, it need only have inserted "or on behalf of" in section VI(A)(3) to make its intent crystal clear. "Words deleted from a contract may be the strongest evidence of the intention of the parties." *Royal Indemn. Co. v. John F. Cawrse Lumber Co.*, 245 F.Supp. 707, 711 (D.Or.1965).

Under Oregon law we may examine extrinsic evidence as an aid to determining the meaning of contract language, even if the contract, on its face, is not ambiguous. *Welch v. U.S. Bancorp Realty and Mortgage Trust*, 286 Or. 673, 690, 596 P.2d 947, 956 (1979). Fireguard submits the affidavit of the insurance broker who sold the Scottsdale policy to it. The affidavit states: "The purpose of purchasing the additional coverage under the endorsement was to insure, among other things, against the risk of damage to or from subcontractors' work." Attached to the affidavit are four insurance industry documents, which unequivocally show that completed operations exclusions such as section VI(A)(3) are intended to provide coverage for damage to or from work performed by subcontractors.[2]

---

1. Sections VI(A)(1) and (2) read:
   Exclusion[ ](k) [is] replaced by the following:
   (1) to property owned or occupied by or rented to the insured, or, except with respect to the use of elevators, to property held by the insured for sale or entrusted to the insured for storage or safekeeping:
   (2) except with respect to liability under a written sidetract agreement or the use of elevators
   (a) to property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by *or on behalf of* the insured,
   (b) to tools or equipment while being used by the insured in performing his operations.
   (c) to property in the custody of the insured which is to be installed, erected or used in construction by the insured.
   (d) to that particular part of any property, not on premises owned by or rented to the insured,
   (i) upon which operations are being performed by *or on behalf of* the insured at the time of the property damage arising out of such operations, or
   (ii) out of which any property damage arises, or
   (iii) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by *or on behalf of* the insured[.]
   (Emphasis added.)

2. Scottsdale opposes the admission into evidence of the affidavit and its attachments. However, Scottsdale did not file a motion to strike the affidavit in the district court. We have held that "[i]f a party fails to move to

The first attachment is a circular prepared by the Insurance Services Office (ISO). The ISO prepares and publishes standard form provisions that are used to draft policies. The circulars explain the intent, purpose, and effect of the standard form provisions. The ISO promulgated the standard form provision (z) upon which the completed operations exclusion in the Scottsdale policy appears to be based.[3] The ISO circular explains that provision (z) is intended to "exclud[e] only damages caused by the named insured to his own work. Thus, ... [t]he insured would have coverage for damage to his work arising out of a subcontractor's work [and] [t]he insured would have coverage for damage to a subcontractor's work arising out of the subcontractor's work."

The second attachment is an excerpt from the August 1982 Fire Casualty & Surety Bulletin published by the National Underwriters Association. The Bulletin is used by insurance agents and brokers to interpret standard insurance policy provisions. The excerpt states:

> [T]he exclusion eliminates coverage for property damage to work performed by the named insured if the property damage arises out of the named insured's work or any portion of it.
>
> Thus, an insured *has* coverage for his completed work when the damage arises out of work performed by someone other than the named insured, such as a subcontractor.... The usual Completed Operations coverage (no Broad Form Property Damage endorsement attached) flatly excludes property damage to work performed by *or on behalf of* the named insured arising out of the work. Under the usual coverage, then, the insured has no insurance whatsoever for damage to a

subcontractor's work or for damage to his own work resulting from a subcontractor's work. Therein lie the advantages of Broad Form Property Damage coverage including Completed Operations. Consequently, if an insured does not anticipate using subcontractors, the value of purchasing Broad Form Property Damage coverage *with Completed Operations* is questionable, in view of the additional premium required for it.

The third attachment is an excerpt on completed operations exclusions from J. Gibson, *Broad Form Property Damage Coverage: Analysis, Application and Alternatives* 12–15 (2d ed.1982), a reference manual published by the International Risk Management Institutes, Inc. The excerpt states that work performed by subcontractors is not excluded from coverage by language like that in section VI(A)(3) in the endorsement.

The fourth attachment also reflects the industry's understanding that the completed operations exclusion does not apply to the work of subcontractors. It criticizes those courts that have concluded otherwise. *See* M. Audet, *Broad Form Completed Operations: An Extension of Coverage or a Trap?*, Canadian Underwriter, Oct. 1984, at 36.

A state appellate court has concluded, as we have, that deletion of the phrase "or on behalf of" from a completed operations exclusion identical to section VI(A)(3) here means that the work of subcontractors is covered. *See Southwest La. Grain, Inc. v. Howard A. Duncan, Inc.*, 438 So.2d 215, 223, 224 (La.App.1983).

*Minnesota Case Law*

Cases from Minnesota interpreting similar exclusions persuaded the district court

---

strike an affidavit that is allegedly defective under Rule 56(e), he waives any objection to it." *Allen v. Scribner*, 812 F.2d 426, 435 n. 18 (9th Cir.1987) (citing 10A C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2738, at 507–09 (2d ed. 1983)) ("A party must move to strike an affidavit that violates Rule 56(e); if he fails to do so, he will waive his objection....").

**3.** The ISO's standard form provision (z), almost identical to section VI(A)(3) in the Scottsdale policy, states:

[W]ith respect to the *completed operations hazard* and with respect to any classification stated below as "including completed operation," to *property damage* to work performed by the *named insured* arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

to hold that section VI(A)(3) precludes insurance coverage for damage caused by the work of subcontractors. *See Knutson Const. v. St. Paul Fire & Marine Ins. Co.,* 396 N.W.2d 229 (Minn.1986) and *Bor-son Bldg. Corp. v. Employers Commercial Union Ins. Co.,* 323 N.W.2d 58 (Minn.1982).

The Minnesota Supreme Court decided that the intent of a comprehensive general liability policy is to protect against "tort liability for physical damage to others, not for contractual liability of the insured for economic loss because the ... completed work is not that for which the damaged person bargained." *Bor-son,* 323 N.W.2d at 63 (quoting Henderson, *supra* p. 3, at 441). Consequently, the court held in *Bor-son* that such a policy does not cover contractual claims to repair defects caused by faulty materials and workmanship. The *Bor-son* court distinguished contractual business risks, which the general contractor assumes, from the risks of tort liability to third parties, which the insurer assumes. *See also Knutson,* 396 N.W.2d at 232.

The general contractor in *Knutson* tried to distinguish *Bor-son* on the ground that the court in *Bor-son* did not consider a completed operations hazard exclusion in an endorsement that modified a basic policy. The exclusion in *Knutson* is practically identical to section VI(A)(3).[4] The general contractor, like Fireguard, insisted that he was covered for claims arising out of the work of subcontractors. *See Knutson,* 396 N.W.2d at 236.

The Minnesota court disagreed, finding that the general contractor had "responsibility for all construction work—its own as well as its subcontractors." *Id.* While noting that in some construction projects "the general contractor has less than overall control of the work of subcontractors," the court recalled that in *Bor-son* the exclusive control and responsibility that the general contractor had over the project was decisive. *Id.* Because the construction contract in *Knutson* required the general

contractor to furnish all materials and labor, the court decided that he, too, had responsibility for all construction work, including that of the subcontractors. The court further stated:

> [W]hether the work was "done by" or "on behalf of" the general contractor is irrelevant to the analysis. The completed product is to be viewed as a whole, not as a "grouping" of component parts.... Slight difference in wording in the work performed exclusion in the [broad form property damage] endorsement does not affect this exclusion.

*Id.* at 237.

The court explained why it thought the phrase "or on behalf of" was deleted from the endorsement:

> "The deletion of the phrase relating to subcontractors in the exclusion in the completed operations policy makes sense because the insured contractor has presumably accepted the subcontractor's work as his own (at least so far as its potential tort liability is concerned), and has turned the completed work over to the owner by the time such a completed operations policy is operative."

*Id.* (quoting *Tucker Constr. Co. v. Michigan Mutual Ins. Co.,* 423 So.2d 525, 528 (Fla.App.1982)).

We think this explanation does not square with the language of the endorsement: it ignores the careful drafting that characterizes insurance policies. Moreover, neither *Knutson* nor *Bor-son* refers to the industry's interpretation of the standard form exclusion, which is strong evidence of the intent of the parties.

If a general contractor's liability policy insures against risks outside his or her control, such a risk surely can arise from a subcontractor's work. Having selected subcontractors, a general contractor may have little or no effective control over the manner in which subcontractors perform work. There are many situations where a general contractor knows little, if anything,

---

**4.** Provision (t) in the *Knutson* policy states:
   With respect to the completed operations hazard, to property damage to the work performed by the Named Insured arising out of

the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.
396 N.W.2d at 233 n. 5.

about the exigencies of a subcontractor's work. An example is the soil testing performed prior to a construction project, which typically is subcontracted. Consequently, it is not out of the question that policies are drafted to cover risks from a subcontractor's work. From this perspective, we find unpersuasive the argument that because the prime contractor's control makes the work of a subcontractor a contractual business risk, the prime contractor should not be able to obtain insurance against that risk. *See Knutson*, 396 N.W.2d at 232.[5]

## II. *The Products Exclusion*

Scottsdale argues that the products exclusion excludes coverage for damage to the water reservoir tank and the surrounding berm. The products exclusion states that insurance does not apply:

> (n) to *property damage* to the *named insured's products* arising out of such products or any part of such products.

The policy defines "named insured's products" as:

> [G]oods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name including any container thereof
>
> . . . .

The exclusion denies coverage for damages arising out of a defect in a product. It precludes liability for an insurer as a warrantor of the insured's products. *Timberline Equip. Co. v. St. Paul Fire & Marine Ins. Co.*, 281 Or. 639, 643–44, 576 P.2d 1244, 1246–47 (1978). The exclusion has been interpreted to exclude coverage for damage to one component or part of a larger product. *Id.* at 643–44, 576 P.2d at 1247.

To exclude coverage under the products exclusion, Scottsdale must show that: (1)

the damage was done to Fireguard's product, and (2) the damage arose out of Fireguard's products.

Under the policy's definition, the water reservoir tank is a product. Fireguard sold the tank to WKO, and handled it during the process of installation. However, the preparation of a site is not a product under the definition. Site preparation is not an object that can be conveyed from the insured to others, as the definition implies. *Cf. Timberline*, 281 Or. at 644, 576 P.2d at 1247 (defective guylines are part of a tower; therefore, products exclusion excludes coverage). Instead, it is the performance of a service. *See Kissel v. Aetna Casualty & Surety Co.*, 380 S.W.2d 497, 506 (Mo.App.1964) (subcontractor's digging of foundations, grading a site, and backfilling and shaping the construction area after installation of the foundation is a service, not a product), *Clements v. Aetna Casualty & Surety Co.*, 15 Ohio Misc. 252, 236 N.E.2d 799, 803 (1968) (a service, not a product, where contractor backfilled, flushed, and compacted a sewer trench after installation of a sewer line).

Even if the water reservoir tank is a product, however, there is no showing that the damage arose out of it. The complaint does not allege that the damage was caused by some defect in the water reservoir tank. Instead, the allegation is that the damage arose from soil instability caused by "negligent and improper site preparation and installation by the subcontractor." First Amended Complaint at 3. Because these are services, not products, the products exclusion does not exclude coverage for the damage that occurred.

## CONCLUSION

Because we conclude that neither the completed operations hazard exclusion nor

---

**5.** After oral argument, Scottsdale provided us with two additional authorities for their position: *Western World Ins. Co. v. H.D. Eng'g Design and Erection Co.*, 419 N.W.2d 630 (Minn. App.1988) and *Vari Builders, Inc. v. U.S. Fidelity and Guar. Co.*, 523 A.2d 549 (Del.Super.1986). However, *Western World* is distinguishable because it involves a suit against a subcontractor, not a general contractor. *See* 419 N.W.2d at

635. *Western World* does describe the grounds for Scottsdale's theory, which we reject. In *Vari Builders*, 523 A.2d at 552, the court decided that the work of subcontractors is part of the completed operations exclusion, because it is merely a component of the general contractor's work. Again, we reject this idea. Neither *Western World* nor *Vari Builders* mentions authoritative insurance industry publications to the contrary.

the products exclusion precludes coverage, Scottsdale has a duty to defend, and if necessary, to indemnify Fireguard for its losses. Fireguard is not entitled to attorneys' fees under ORS 743.114 because it has not recovered a money judgment. *See McCraw v. Gwinner*, 282 Or. 393, 400, 578 P.2d 1250, 1252 (1978) ("to secure attorney fees pursuant to ORS 743.114, the insured must recover a money judgment against the insurer; ...").

REVERSED.