**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-1782**

SCHNABEL FOUNDATION COMPANY,

Plaintiff – Appellant,

v.

NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH,
PENNSYLVANIA,

Defendant – Appellee.

Appeal from the United States District Court for the District of Maryland, at Greenbelt.
Paula Xinis, U.S. District Court Judge.  (8:16-cv-00895-PX)

Argued:  May 7, 2019                                    Decided:  July 10, 2019

Before GREGORY, Chief Judge, and AGEE and DIAZ, Circuit Judges.

Affirmed by unpublished opinion.  Judge Agee wrote the opinion, in which Chief Judge
Gregory and Judge Diaz joined.

**ARGUED:** C. Thomas Brown, SILVER & BROWN, Fairfax, Virginia, for Appellant.
Agelo L. Reppas, BATESCAREY LLP, Chicago, Illinois, for Appellee.  **ON BRIEF:**
Paul D. Smolinsky, JACKSON & CAMPBELL, Washington, D.C.; Justin K. Seigler,
BATESCAREY LLP, Chicago, Illinois, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

AGEE, Circuit Judge:

In this insurance coverage case, Schnabel Foundation Company ("Schnabel") appeals from the district court's order granting summary judgment to National Union Fire Insurance Company ("NU"). *Schnabel Found. Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. PX-16-0895, 2018 WL 2967384 (D. Md. June 12, 2018). For the reasons below, we affirm.

I.

This case arises from the delay of a building construction project in Bethesda, Maryland. Bainbridge St. Elmo Bethesda Apartments, LLC ("Bainbridge") owned the land at issue ("the Site") and built a 17-story mixed-use building on it called "the Monty." Bainbridge hired Turner Construction Company ("Turner") as the general contractor for the project and Turner subcontracted with Schnabel, a building foundation company, to provide the "support of excavation" system ("SOE").

An SOE retains the earth immediately surrounding a building site and provides lateral support to neighboring properties during construction. The SOE at issue consisted of steel beams called "soldier piles" and wooden slats called "lagging." To create the SOE, Schnabel drilled large holes several feet apart, installed the soldier piles vertically in the holes, and attached the lagging horizontally to the soldier piles. This SOE framework holds back earth on adjoining properties as excavation and construction occur on the Site. An SOE is crucial "until the foundation slab and walls are installed[,] at

2

which time the construction provides support." J.A. 249 ¶ 27. When the built structure is complete, the SOE is "abandoned in place." J.A. 249 ¶ 27.

In September 2011, Schnabel began constructing the Monty's SOE by boring holes and installing soldier piles along the Site's property line. Several buildings abutted the property line, including one that White Flint Express Realty Group Limited Partnership ("White Flint") owned and leased to business tenants. Schnabel, in an attempt to construct the SOE as close to the property line as possible, drilled larger holes for the soldier piles than it had planned. Because the holes were oversized, the earth around them shifted and sloughed into the holes. Schnabel then had to use a vibrating air hammer to install the remaining soldier piles, which exacerbated the soil movement. Schnabel admits it "altered the means and methods of installation by . . . drilling larger holes" than planned and "hammer[ing] down [soldier piles] for the final feet of the installation." J.A. 244 ¶ 17.

Schnabel had contracted with Turner to complete the SOE in March 2012, but during SOE construction in December 2011, Turner informed Schnabel that the floor of a restaurant in the adjoining White Flint building had buckled. Indeed, because of the SOE excavation at the Site, the earth under the White Flint building and other neighboring properties shifted, causing damage to those buildings. It is undisputed that Schnabel's deficient SOE installation caused the soil to shift.

In March 2012, citing the damages to the neighboring properties, Montgomery County issued a Stop Work Order for the Monty project. From March to July, only safety measures could be implemented at the Site, and Schnabel had to remediate its SOE work

3

by installing reinforcements and implementing other County-approved design changes. Regular construction resumed in July, and Schnabel eventually completed a proper SOE in late October 2012, about seven months late. The Monty project continued to completion, but Schnabel's faulty work on the SOE delayed the contracted completion date for approximately one year.

## II.

Turner purchased two insurance policies for the Monty project, which together comprised a Contractor Controlled Insurance Plan ("CCIP").[1] The policy at issue here is only the umbrella Commercial General Liability ("CGL") policy Turner obtained from NU ("the Policy"). Under the Policy, NU agreed to "pay on behalf of the Insured those sums in excess of the Retained Limit that the Insured becomes legally obligated to pay as damages by reason of liability imposed by law because of . . . Property Damage . . . caused by an Occurrence" during the Policy period. J.A. 132.

After Schnabel's faulty SOE construction damaged the neighboring properties, White Flint and other adjoining parties sued Bainbridge, Turner, and Schnabel for property damages and business disruption losses. Bainbridge, Turner, and Schnabel then sued each other, seeking to saddle the other with those liabilities. *See Schnabel*, 2018 WL 2967384, at *2 (discussing the multiple lawsuits among the parties). Bainbridge sued

---

[1] Turner purchased the primary CCIP policy from Liberty Mutual Insurance Company. That policy had a $2 million limit, which Liberty Mutual paid out in full through its defense and indemnification of Bainbridge, Turner, and Schnabel. No one makes any remaining claims under the Liberty Mutual policy, so it is not at issue here.

4

Turner for construction delay costs, lost profits, and loss of use damages ("delay damages"), and Turner sought insurance coverage under the Policy. When NU denied coverage, Bainbridge accepted $3 million in settlement from Turner and assigned its remaining rights to Turner. Turner then sued Schnabel for the costs of Schnabel's SOE remediation work ("repair damages") and for indemnification for the Bainbridge settlement. Schnabel sought coverage from NU, which again denied coverage. Turner accepted $5 million in settlement from Schnabel and assigned its remaining rights to Schnabel.

Schnabel then sued NU in Maryland state court seeking $8 million in coverage, consisting of $3 million for Bainbridge's delay damages and $5 million for Turner's repair damages, all of which NU maintains the Policy does not cover.[2] NU removed the case to federal court, and the District of Maryland properly exercised diversity jurisdiction under 28 U.S.C. § 1332.[3] We have jurisdiction under 28 U.S.C. § 1291.

III.

NU denied coverage based on its interpretation of several Policy terms, which are central to our decision. First, NU argued Schnabel's claimed damages were not caused by an "Occurrence" as defined in the Policy. Under the Policy, "Occurrence," with respect to

---

[2] Schnabel brought its claim directly against NU because Turner assigned its rights against NU to Schnabel in the parties' settlement.

[3] For purposes of diversity jurisdiction, Schnabel is a citizen of Washington, D.C. and Virginia; NU is a citizen of Pennsylvania and New York; and the amount in controversy exceeds $75,000. *See* 28 U.S.C. § 1332.

5

"Property Damage, [means] an accident, including continuous or repeated exposure to substantially the same general harmful conditions. All such exposure to substantially the same general harmful conditions will be deemed to arise out of one Occurrence." J.A. 152. NU contends Schnabel's faulty SOE work is an uncovered business risk, not an "Occurrence." Schnabel counters that it is a covered "accident" and therefore an "Occurrence." The Parties also dispute whether Schnabel's claims arise from "Property Damage." Defined in the disjunctive, "Property Damage" means

1. physical injury to tangible property, including all resulting loss of use of that property. All such loss of use will be deemed to occur at the time of the physical injury that caused it; or
2. loss of use of tangible property that is not physically injured. All such loss of use will be deemed to occur at the time of the Occurrence that caused it.

J.A. 154. The Parties do agree that the Site is "tangible property" as used in the Policy's definition of "Property Damage."[4]

Second, NU denied coverage because it contends that even if an "Occurrence" caused Schnabel's damages, they fall under Exclusion D of the Policy: "Damage to Impaired Property or Property Not Physically Injured." J.A. 137. Under Exclusion D, Policy coverage

does not apply to Property Damage to Impaired Property or property that has not been physically injured, arising out of:
1. a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work; or
2. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

---

[4] The Policy does not define "tangible property" except to exclude "electronic data." J.A. 154.

6

J.A. 137.[5] That is, to fall under Exclusion D, the property at issue must satisfy two conditions: 1) it must be a certain type of property—"Impaired Property *or* property that has not been physically injured"—*and* 2) it must suffer an enumerated "Property Damage"—"a defect, deficiency, inadequacy or dangerous condition in . . . Your Work; or . . . a delay or failure by you or anyone acting on your behalf to perform a contract." J.A. 137 (emphasis added). Schnabel responds that Exclusion D is inapplicable and, alternatively, that an exception to Exclusion D applies, which allows for coverage when "the loss of use of other property aris[es] out of sudden and accidental physical injury to Your Product or Your Work after it has been put to its intended use." J.A. 137.

The Parties' dispute over Exclusion D also involves the term "Impaired Property," defined in the Policy as

> tangible property, other than Your Product or Your Work, that cannot be used or is less useful because:
>   1. it incorporates Your Product or Your Work that is known or thought to be defective, deficient, inadequate or dangerous; or
>   2. you have failed to fulfill the terms of a contract or agreement;
> if such property can be restored to use by:
>   1. the repair, replacement, adjustment or removal of Your Product or Your Work; or
>   2. your fulfilling the terms of the contract or agreement.

J.A. 149–50.

And, finally, since "you," "your," and "Your Work" appear in several Policy terms, their definitions are also relevant here. "[T]he words 'you' and 'your' refer to the

---

[5] NU argues that several Policy exclusions apply, but because we hold that Exclusion D applies, we need not discuss any others.

Named Insured shown in the Declarations and any other person or organization qualifying as a Named Insured under this policy." J.A. 132. Turner is the "Named Insured." J.A. 130. And the term "Your Work" means: "1. work or operations performed by you or on your behalf; and 2. materials, parts or equipment furnished in connection with such work or operations." J.A. 155. The Parties agree that New Jersey law governs the Policy, and the district court applied that law to interpret its terms.

## IV.

In response to the Parties' cross-motions for summary judgment, the district court first held that Schnabel's claimed repair damages are not covered under the Policy as a matter of law because the faulty SOE work is a business risk, which a CGL policy does not cover. *Schnabel*, 2018 WL 2967384, at *4. It then held that Schnabel's delay damages do come under the Policy and resulted from an "Occurrence" because Schnabel's faulty SOE work caused an accidental "loss of use" of the Site. *Id.* Nonetheless, the court concluded Schnabel is not entitled to coverage because Exclusion D bars the claim for Schnabel's delay damages.

In analyzing Exclusion D, the district court first explained that the Site could be either type of property noted in the Exclusion. The Site is "property that has not been physically injured" because Schnabel's SOE work damaged only the neighboring properties, while the Site "was in its excavating infancy and itself was not physically

8

injured." *Id.* at *5.[6] Alternatively, the court found the Site is also "Impaired Property" because Schnabel's deficient work made it "less useful" while it was "shut down" for months of safety and remedial measures. *Id.* at *6. The court then determined that Schnabel's "adjust[ment of] its original SOE work to make the site safe and allow construction to continue" was the restoration required to classify the Site as "Impaired Property." *Id.* In doing so, the district court rejected Schnabel's argument that its SOE revisions were "additional work" and not "adjustments." *Id.*

The court went on to explain that the Site suffered a damage enumerated in Exclusion D, as Schnabel's SOE work, which qualified as "Your Work," was "inadequate" and amounted to "a defect, deficiency, [or] inadequacy" or "a delay or failure . . . to perform a contract." *Id.* at *5–6. In doing so, the court rejected Schnabel's argument that the damage to the White Flint building and the Stop Work Order "proximately caused" the project delays; rather, Schnabel's deficient work caused the building's damage and "significant delays" to the Monty project, such that Schnabel's monetary damages "arose from [its] defective work" as contemplated in Exclusion D. *Id.* at *6.

Finally, despite Schnabel's argument to the contrary, the court concluded that the exception to Exclusion D does not apply. That exception applies, the court held, only if the work itself suffered a "sudden or accidental physical injury" after it was put to use,

---

[6] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

but Schnabel's SOE suffered no damage before or after it was put to use. *Id.* at *7. It was simply deficient.

Because the district court held that the facts support the property type and event requirements of Exclusion D and that its exception does not apply, the court granted summary judgment to NU.

V.

We review a district court's grant of summary judgment *de novo*. *Ohio Valley Envtl. Coal., Inc. v. Pruitt*, 893 F.3d 225, 229 (4th Cir. 2018). Though a review of summary judgment generally requires an assessment of the facts in the record, the Parties here dispute whether the plain language of the Policy provides coverage for Schnabel's damages. This legal inquiry demands a straightforward application of the Policy terms in light of well-settled contract principles under the applicable state law. *See Buczek v. Cont'l Cas. Ins. Co.*, 378 F.3d 284, 288 (3d Cir. 2004) ("Determination of the proper coverage of an insurance contract is a question of law.") (applying New Jersey law). We therefore interpret the Policy "according to its plain meaning," and, "[w]here the express language of the policy is clear and unambiguous, [we are] bound to enforce the policy as it is written." *Id.*

VI.

As the district court determined that only Schnabel's delay damages flow from an "Occurrence," Schnabel argues that the court erred in excluding its repair damages from

10

the Policy's coverage. NU responds that the Policy covers neither Schnabel's repair nor delay damages because both types relate to the Site itself. According to NU, the Policy does not cover those damages because third-party claims against the signatories are the "insured risk" under a CGL policy, and damage to the Site is not that kind of risk. Response Br. 2. In addition, the Policy does not cover Schnabel's damages because they are purely economic damages, not "property damages."

We agree with the district court that the Policy does not cover Schnabel's repair damages as a matter of law. *See Schnabel*, 2018 WL 2967384, at *4. The Supreme Court of New Jersey has made clear that CGL policies cover damages to third-party property, not costs to replace a contractor's own faulty work. *See Cypress Point Condo. Ass'n, Inc. v. Adria Towers, L.L.C.*, 143 A.3d 273, 283 (N.J. 2016) ("[T]he Court held that CGL policies did not indemnify insureds where the damages claimed are the cost of correcting the alleged defective work itself . . . .").

Furthermore, we need not decide whether the district court correctly analyzed whether an "Occurrence" triggered Policy coverage. Even if we assume there was an "Occurrence," we hold that Exclusion D bars coverage for all of Schnabel's claimed damages.

VII.

As stated, the property at issue falls under Exclusion D if 1) it is "Impaired Property *or* property that has not been physically injured"—*and* 2) it suffers "Property Damage" consisting of "a defect, deficiency, inadequacy or dangerous condition in . . .

11

Your Work; or . . . a delay or failure by you or anyone acting on your behalf to perform a contract." J.A. 137 (emphasis added). Schnabel contends the district court erred because, in its view, neither of the Exclusion D conditions is present here. We disagree.

A.

1.

Regarding the Site's property classification under the first condition, Schnabel argues that the Site is neither "Impaired Property" nor "property that has not been physically injured." *See* J.A. 137. According to Schnabel, "Impaired Property" in Exclusion D stems from "Your Work," which refers to the work of Turner, the Named Insured, not the work of Schnabel. *See* J.A. 137, 155. Nor is the Site "Impaired Property" because it was not "restored to use" by the repair or removal of Schnabel's SOE work, which was never removed, but was incorporated into the Monty structure and "abandoned in place" after construction. *See* J.A. 150, 249 ¶ 27. Finally, Schnabel posits the Site is not "property that has not been physically injured" because the deficient SOE installation prevented the Site from providing lateral support to its neighbors, and that inability rendered it "physically injured." *See* J.A. 137.

NU responds that the Site is "Impaired Property" because it is tangible property that became "less useful" while the Stop Work Order was in effect. *See* J.A. 149. Schnabel's faulty SOE was also "defective, deficient, [or] inadequate" within the meaning of "Impaired Property," and Schnabel's "adjustment" of the SOE "restored [the Site] to use." *See* J.A. 149–50. The Site is also "property that has not been physically injured" because the SOE problem occurred in the early stages of the Monty's

12

construction and did not cause any physical injury to the Site, whereas the adjacent properties suffered damage. *See* J.A. 137.

2.

We hold that the district court correctly classified the Site as either type. The Site is "Impaired Property" under the first prong of that term's definition because it is "tangible property" that became "less useful" through the "incorporat[ion]" of the defective SOE, which necessitated the Stop Work Order. *See* J.A. 149. Schnabel also "failed to fulfill" its contractual duty to provide an adequate SOE, rendering the Site "less useful" under the second prong. *See* J.A. 149. And, as contemplated in the definition of "Impaired Property," the Site was "restored to use" through Schnabel's reinforcement of the SOE and eventual fulfillment of its contract with Turner. *See* J.A. 150.

Even if the Site was not "Impaired Property," it satisfies the first condition of Exclusion D because it is "property that has not been physically injured." *See* J.A. 137. Though the Policy does not define "physically injured," we interpret this term according to its plain meaning. *Buczek*, 378 F.3d at 288. We conclude that the Site suffered no physical injury due to the defective SOE; only the Site's neighboring properties suffered physical injury through floor buckling and other cognizable property damage. The Site was temporarily unable to provide lateral support to its neighbors, but that caused no injury to the Site itself. It is also undisputed that the Site was fully restored after Schnabel remediated its SOE work, such that the Site was "not . . . physically injured" under Exclusion D. *See* J.A. 137.

13

## B.

### 1.

As for Exclusion D's second condition, Schnabel claims the Site suffered no enumerated damage. Although it suffered "Property Damage" in that it could not provide lateral support to its neighbors, the resulting delay damages were due not to Schnabel's work, but to the White Flint building's buckling—a "defect, deficiency, inadequacy or dangerous condition"—and the County's Stop Work Order. *See* J.A. 137.

NU responds that Exclusion D applies because the Site suffered both a "defect" and "a delay . . . to perform a contract." *See* J.A. 137. It contends "Your Work" refers to Schnabel's work because "your" refers to the Named Insured, and Schnabel is a Named Insured, just like all parties who were enrolled in Turner's CCIP for the Monty project. *See* J.A. 155. And it is undisputed that Schnabel's work was "deficien[t]" and it failed to timely "perform [its] contract" with Turner, causing Turner to fail to timely "perform [its] contract" with Bainbridge. *See* J.A. 137.

### 2.

For Exclusion D to apply, the Site must also have suffered an enumerated damage. We hold that Schnabel's damaging work qualifies as "a defect, deficiency, inadequacy or dangerous condition in Your Product or Your Work" and "a delay or failure by you or

14

anyone acting on your behalf to perform a contract," either of which could produce "Property Damage."[7] J.A. 137.

Though "you" and "your" in the Policy refer to the Named Insured, Turner, "Your Work" is defined to include "work or operations performed by you or on your behalf." J.A. 130, 132, 155. As one of Turner's subcontractors, Schnabel worked "on [Turner's] behalf" to complete projects in furtherance of Turner's general contract with Bainbridge. *See Fireguard Sprinkler Sys., Inc. v. Scottsdale Ins. Co.*, 864 F.2d 648, 650 (9th Cir. 1988) (noting in a CGL policy case that "[t]he phrase 'or on behalf of' refers to the work of subcontractors"). Thus, "Your Work" includes Schnabel's SOE work.

Applying that result to the undisputed facts, we readily conclude that Schnabel's work satisfies either type of enumerated "Property Damage" in Exclusion D. Schnabel's SOE work was clearly defective, and its failure to timely construct an adequate SOE "on [Turner's] behalf" caused "a delay or failure . . . to perform a contract"—both Schnabel's contract with Turner and Turner's contract with Bainbridge. J.A. 137. Thus, the second condition of Exclusion D is satisfied.

And, finally, we agree with the district court that Exclusion D's exception does not apply because the SOE never endured "sudden and accidental physical injury." J.A. 137. Exclusion D therefore bars coverage for Schnabel's claimed damages.

---

[7] The Site suffered "Property Damage" under the second prong of that term's definition in that it was unusable for several months while Schnabel made the Site safe and remedied its defective work.

15

## VIII.

Because Exclusion D bars coverage for Schnabel's damages, we hold that the district court properly granted summary judgment to NU. That court's judgment is

*AFFIRMED.*